IN THE MATTER OF THE RECEIVERSHIP OF PORT PUBLISHING COMPANY.

CLAIM OF PETITIONERS UNDER CONTRACT BETWEEN THE PORT PUBLISHING COMPANY AND THE WILMINGTON PRINTING PRESSMAN AND ASSISTANT'S UNION, No. 186, AND

CLAIM OF PETITIONERS UNDER CONTRACT BETWEEN THE PORT PUBLISHING COMPANY AND THE WILMINGTON TYPOGRAPHICAL UNION, No. 556.

(Filed 3 February, 1950.)

**1. Master and Servant § 2a—**

An agreement between an employer and its employees which makes union membership or non-union membership a prerequisite of employment, is void in this jurisdiction. G.S. 95-79 *et seq.*

**2. Contracts § 7—**

While a provision in a contract which is against public policy will not be enforced, it will not affect other valid provisions of the contract when such provisions are severable and may be enforced entirely independently of the illegal provision.

**3. Master and Servant § 2a—**

Provisions for a "closed shop" in agreements executed subsequent to the effective date of Chap. 328, Session Laws of 1947, and such provisions in extensions of prior contracts executed subsequent to that date, are contrary to public policy and void.

**4. Same—**

While G.S. 95-79 *et seq.* preclude "closed shop" agreements, the statute does not preclude provisions relating to working conditions, hours, rates of pay, training of journeymen, overtime, vacation and severance pay,

and such provisions are severable and may be sustained irrespective of the invalidity of a "closed shop" provision in the contract.

**5. Receivers § 12c—**

Employees under a contract providing for paid vacations have a lien against the receiver of the employer for ⅙ of their vacation pay, since this amount was earned during the two months next preceding the institution of insolvency proceedings.   G.S. 55-136.

**6. Same—**

Employees under a contract providing for severance pay are not entitled to a lien for such pay against the receiver, since severance pay is not wages earned.   G.S. 55-136.

BARNHILL, J., concurs in result.

APPEAL by C. D. Hogue, Jr., Receiver, from *Nimocks, J.,* at June Term, 1949, of NEW HANOVER.

The Port Publishing Company, a North Carolina corporation, ceased operations on 8 May, 1948, and went into receivership on 14 May, 1948.

The Port Publishing Company entered into a labor contract with the Wilmington Printing Pressman and Assistant's Union, No. 186, on 1 October, 1947, and extended an existing labor agreement with the Wilmington Typographical Union, on 1 December, 1947.   Both contracts, in addition to provisions concerning wages, hours, overtime, vacations, severance pay, etc., contained a "closed shop" agreement.

The agreement between the Port Publishing Company and the Wilmington Printing Pressman and Assistant's Union contains the following provisions relative to "vacation" and "severance" pay: "Employees who have held situations during the twelve months ending April 1, 1948, shall be entitled to two weeks vacation with pay. . . . In event of consolidation or suspension, all employees affected shall receive severance pay of not less than two weeks pay at their regular rate of pay." The contract of the other Union provides for a two weeks vacation with pay and not less than three weeks' severance pay.   All the petitioning employees had been with the Port Publishing Company long enough, on 8 May, 1948, to be entitled to "vacation" and "severance" pay under the terms of the respective contracts.

All the petitioning employees were paid their regular salaries up to the date the corporation ceased operations, but the Receiver declined to pay the amounts claimed by the employees as "vacation" and "severance" pay.   The amounts claimed are not in dispute.

This cause came on for hearing before his Honor, at the June Term, 1948, of the Superior Court of New Hanover County, and all parties agreed that the judgments might be signed *nunc pro tunc,* out of term and out of the District.   Judgments were signed and filed 5 July, 1949,

in favor of the petitioning employees under the respective contracts, in which the trial judge held the petitioning employees were entitled to priority payment out of the funds in the hands of the Receiver for "vacation" and "severance" pay within the meaning and purview of G.S. 55-136; and that the contracts between these respective Unions and the Publishing Company were valid and enforceable, except the provisions in the contracts establishing a "closed shop." The vacation pay was limited to the pro rata part thereof which the respective employees earned in the two months next preceding the date when the corporation was placed in receivership.

The Receiver appeals and assigns error.

*Clayton C. Holmes for Typographical Union, No. 556.*

*Elbert A. Brown for Wilmington Printing Pressman and Assistant's Union, No. 186.*

*E. H. Bellamy, C. D. Hogue, Sr., Wallace C. Murchison, and R. E. Calder for Port Publishing Company.*

DENNY, J.  An agreement entered into by and between an employer and its employees, in which it is agreed that the employer will only employ members of a union, or that it will only employ non-union members, is void in this jurisdiction, in so far as it makes union membership or non-union membership a prerequisite to employment.  Chapter 328, 1947 Session Laws of North Carolina, G.S. 95-79 to 95-84; *S. v. Whitaker,* 228 N.C. 352, 45 S.E. 2d 860, which decision was affirmed by the Supreme Court of the United States, and reported in 335 U.S. 525, 93 L. Ed. 301.

A provision in a contract which is against public policy will not be enforced.  *Glover v. Ins. Co.,* 228 N.C. 195, 45 S.E. 2d 45; *Cauble v. Trexler,* 227 N.C. 307, 42 S.E. 2d 77; *Waggoner v. Publishing Co.,* 190 N.C. 829, 130 S.E. 609; *Phosphate Co. v. Johnson,* 188 N.C. 419, 124 S.E. 859; *Burbage v. Windley,* 108 N.C. 357, 12 S.E. 829, 12 L.R.A. 409. Even so, when such agreement contains provisions which are severable from an illegal provision and are in no way dependent upon the enforcement of the illegal provision for their validity, such provisions may be enforced.  *Glover v. Ins. Co., supra; Annuity Co. v. Costner,* 149 N.C. 293, 63 S.E. 304, 17 C.J.S., Sec. 289, p. 674, *et seq.,* and 12 Am. Jur., Sec. 220, p. 738, *et seq.,* where the general rule governing such contracts is stated in the following language: "It is well established that the fact that a stipulation is unenforceable because of illegality does not affect the validity and enforceability of other stipulations in the agreement, provided they are severable from the invalid portion and capable of being construed divisibly.  Moreover, it makes no difference whether there are

two distinct promises, whether there is one promise that is divisible, or whether the consideration for the two promises is entire or apportionable. At least this is true where the illegal provision is clearly separable and severable from the other parts which are relied upon and does not constitute the main or essential feature or purpose of the agreement. If, however, any part of a nonseparable agreement is void for illegality or reasons of public policy, the taint extends to every part of it and neither party can enforce any of its provisions against the other."

In the instant case, the "closed shop" agreement between the Port Publishing Company and the Wilmington Typographical Union was legal and valid until the contract was extended on 1 December, 1947, at which time it became *eo instante* null and void, being in contravention of the provisions contained in G.S. 95-78 to 95-84. Likewise, the agreement which was entered into between the Port Publishing Company and the Wilmington Typographical Union, on 1 October, 1947, containing a "closed shop" agreement, was void in so far as it provided for a "closed shop." Therefore, the provision in these respective contracts providing for a "closed shop," being in violation of the above statutes, and contrary to public policy, such provision could constitute no part of the consideration for the execution or extension of the agreements. And likewise, any right under the terms of the respective contracts which must be bottomed on the validity of the "closed shop" agreement cannot be enforced.

However, it is only when the illegal element in a contract permeates the entire agreement that such contract is void in its entirety. *Shoe Co. v. Department Store,* 212 N.C. 75, 195 S.E. 9; *Marshall v. Dicks,* 175 N.C. 38, 94 S.E. 514; *Fashion Co. v. Grant,* 165 N.C. 453, 81 S.E. 606; *Culp v. Love,* 127 N.C. 461, 37 S.E. 476. In each of these cases, the relief sought was bottomed on an illegal contract, one prohibited by law or contrary to public policy, consequently the relief sought was denied.

It is the declared public policy of North Carolina "that the right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization or association." But there is nothing in this policy to indicate that the Legislature intended to restrict the power of an employer and its employees to contract in the field of labor relations, in any respect, except as to certain matters set forth in G.S. 95-79 to 95-84. And the provisions contained in the contracts under consideration relative to working conditions, hours, rate of pay, training of journeymen, overtime, vacation and severance pay, are not violative of the above statutes, and are, therefore, severable and may be sustained irrespective of the invalidity of the "closed shop" provisions in the contracts.

There is no dispute between the parties as to the terms of the respective agreements relative to hourly wages, "vacation" or "severance" pay.

Therefore, the determinative question presented is whether or not the petitioners are entitled to a prior lien for "vacation" and "severance" pay, within the provisions of G.S. 55-136, the pertinent part of which reads as follows: "In case of the insolvency of a corporation, partnership or individual, all persons doing labor or service of whatever character in its regular employment have a lien upon the assets thereof for the amount of wages due to them for all labor, work, and services rendered within two months next preceding the date when proceedings in insolvency were actually instituted and begun against the corporation, partnership or individual, which lien is prior to all other liens that can be acquired against such assets. . . ."

It was the intent of the Legislature to create a lien on the assets of an employer in favor of his employees who come within the purview of the statute, for the amount of all wages earned during the two months next preceding the date of the institution of insolvency proceedings. *Iron Co. v. Bridge Co.*, 169 N.C. 512, 86 S.E. 184. And these petitioners earned one-sixth of their vacation pay during such period. This view is in accord with the interpretation given to priority payments for wages under our Bankruptcy Act, 11 U.S.C. 104 (a) (2). *State of California v. Sampsell* (Ninth Circuit), 172 F. 2d 400; *Kavanas v. Mead* (Fourth Circuit), 171 F. 2d 195; *In re Kinney Aluminum Co.* (Cal.), 78 F. Supp. 565; *In re B. H. Gladding Co.* (R. I.), 120 Fed. Rep. 709.

On the other hand, "severance" pay is in the nature of liquidated damages which was agreed upon in advance, as compensation for any loss that might be sustained by the employees of the Port Publishing Company "in the event of the consolidation or suspension" of the corporation, and not for wages earned. Such pay, in our opinion, does not come within the purview and meaning of the provisions of G.S. 55-136. *In re Public Ledger* (Third Circuit), 160 F. 2d 762, upon which the appellees are relying, does not sustain their position. The decision does not purport to construe our statute nor does it hold that the priority given to the payment of certain wages due by a bankrupt estate, under the priority provisions of our Federal Bankruptcy Act, may include "severance" pay. The Court held that since the Trustees of the bankrupt estate continued the operation of the business and ratified the labor contract, which had been entered into theretofore by and between the bankrupt and its employees, "severance" pay was allowable, not as a preferred lien but as an administrative expense.

It follows, therefore, that the judgment entered below will be modified to conform to this decision.

Modified and affirmed.

BARNHILL, J., concurs in result.