Charlotte Gwen TATHAM, Plaintiff,

v.

Dr. Harold HOKE, Defendant and Third-Party Plaintiff,

v.

Dr. Don R. Capell, Dr. J. L. Simpson, Dr. W. F. Strait, III, Rock Hill Gynecological and Obstetrical Associates, P.A., Third-Party Defendants.

No. C–C–78–083.

United States District Court, W. D. N. Carolina, Charlotte Division.

April 18, 1979.

---

W. J. Chandler, Haynes, Baucom, Chandler & Claytor, P.A., Charlotte, N. C., for plaintiff.

William H. Elam, Elam & Kaplan, P.A., Charlotte, N. C., for defendant and third-party plaintiff.

J. A. Gardner, III, Hedrick Parham, Helms, Kellam & Feerick, Charlotte, N. C., for third-party defendants.

## ORDER

McMILLAN, District Judge.

On March 9, 1978, plaintiff Charlotte Gwen Tatham filed this action alleging that on April 2, 1977, defendant Dr. Harold Hoke negligently performed an abortion resulting in her subsequent hospitalization and surgical treatment. Defendant Hoke answered and moved to dismiss the complaint for plaintiff's failure to comply with the notice and amount-of-liability limitations stated on one side of the agreement the parties entered into prior to the proce-

dure. Dr. Hoke moved in the alternative for a stay of the action pending arbitration in conformity with the mandatory arbitration provisions also appearing on the contract form.

Shortly after filing answer, plaintiff Hoke sued as third-party defendants Dr. Don R. Capell, Dr. J. L. Simpson, Dr. W. Frank Strait, III, and Rock Hill Gynecological and Obstetrical Associates, P.A., the Rock Hill, South Carolina, professional group with which all three third-party defendants are associated. Dr. Hoke contends that plaintiff's suffering, if any, was not the product of any alleged negligence on his part, but rather the result of negligent treatment afforded plaintiff Tatham by the third-party defendants after her return to South Carolina following the abortion procedure performed at Dr. Hoke's clinic. All third-party defendants have moved to dismiss on the alternative grounds that the court has no personal jurisdiction over them and that Dr. Hoke has failed to state a claim for relief under the law of the controlling forum. Dr. Hoke has responded by moving, *inter alia,* that these same persons be joined under rule 19 of the Federal Rules of Civil Procedure as persons needed to insure a just adjudication.

Dr. Hoke has also moved for joinder of a new defendant, York General Hospital, generally stating that its joinder is related to the third-party action and that York General officials have refused to honor discovery requests for the production of documents relating to plaintiff's stay there.

■ *Third-Party Defendants.*—There appears to be no dispute that plaintiff Tatham received all her treatment from Dr. Hoke while in North Carolina, and that she received all her treatment from the third-party defendants while in South Carolina. Dr. Hoke's claim for indemnity or contribution, then, must be founded exclusively on acts (or omissions) of the third-party defendants occurring in South Carolina. The choice of laws rule of North Carolina is clear: the substantive law of the forum in which the acts giving rise to the claim occurred governs. *See Charnock v. Taylor,* 223 N.C. 360, 26 S.E.2d 911 (1943); *cf. Henry v. Henry,* 291 N.C. 156, 229 S.E.2d 158 (1976). The law of *South* Carolina, therefore, governs the viability of the third-party complaint.

■ A review of South Carolina law demonstrates that the third-party complaint fails to state a claim upon which relief can be granted, whether the relief sought be denominated as indemnity or contribution. The general rule in South Carolina is stated in *Atlantic Coast Line Railroad Co. v. Whetsone,* 243 S.C. 61, 132 S.E.2d 172 (1963):

> "The appellant asserts that it is entitled to indemnity from the respondent for the full amount so paid because the injury to its employee was directly and proximately caused by the active gross negligence and carelessness of the respondent

> . . .

> \*    \*    \*    \*    \*    \*

> "The general rule is that there can be no indemnity among mere joint tort-feasors. Since the decision in *Merryweather v. Nixan,* decided in 1799, 8 T.R. 186, 101 Eng.Reprint 1337, it has been said to be an established principle of the common law that *as between joint tort-feasors there is no right of contribution or indemnity,* the rule being premised on the doctrine that the Courts are not open to wrongdoers to assist them in adjusting the burdens of their misconduct, and that the law will not lend its aid to one who founds his cause of action on a delict."

132 S.E.2d at 174–75 (*emphasis added*); accord, *United States v. Seckinger,* 397 U.S. 203, 219 n. 4, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970) (Stewart, J., dissenting) (interpreting South Carolina law); *Knight v. Autumn Co.,* 245 S.E.2d 602 (S.C.1978); *Travelers Insurance Co. v. Allstate Insurance Co.,* 249 S.C. 592, 155 S.E.2d 591 (1967).

The only exception to this broad ban against recovery permits a claim for indemnity or contribution to stand either (a) when liability is imputed to one party solely because of a contractual or other relationship between the named defendant and the actual tort-feasor; or (b) when the duty to

contribute or indemnify arises under a valid contract between the parties. *Addy v. Bolton,* 183 S.E.2d 708 (1971). There is no such legal or contractual relationship between the third-party plaintiff and the third-party defendants.

■ Nor is the joinder of these persons necessary for a just adjudication or to prevent inconsistent adjudications. Principles of *res judicata,* as well as the South Carolina bar against contribution among tort-feasors, should prevent Dr. Hoke's inclusion in any possible later suit instituted in South Carolina. Finally, the dismissal should in no way jeopardize defendant Hoke's assertion that he was not negligent and that plaintiff's injuries resulted exclusively from the negligence of the third-party defendants. Those persons are all available to defendant by way of deposition or other discovery, and are, according to defendant Hoke's own motion for rule 19 joinder, within the territorial limits for effective service of process. *See* Federal Rules of Civil Procedure rule 45. Defendant will be able, therefore, to pursue his defense of intervening or superseding cause, without impediment.

Since the third-party complaint does not now and cannot reasonably be amended at this stage to allege a viable claim for relief, the motions of the third-party defendants to dismiss for lack of *in personam* jurisdiction, which appear to have substantial merit, will be dismissed as moot.

■ *Dismissal or Stay of the Main Action.*—Defendant Hoke's claims that the action should be dismissed or, in the alternative, stayed pending the completion of arbitration, are founded exclusively on paragraph 13 of the form entitled "INFORMED CONSENT TO TREATMENT, ANESTHETIC, AND OTHER MEDICAL SERVICES," executed by plaintiff in North Carolina immediately prior to the abortion:

"13. In the event of any dispute between me and Hallmark, my physician, or other personnel, I agree to make a written claim within thirty (30) days of this date. If such a claim is not timely made, I waive any and all rights of recovery. If such a claim is made, be it for professional liability, personal injury, contract, warranty, or other breach of duty, I agree to submit the claim to binding arbitration. In the event of such arbitration, I understand and agree that Hallmark shall choose one physician arbitrator; I shall choose a second physician arbitrator; a third such arbitrator shall be designated by the American Arbitration Association office in Washington, D. C. The decision of the arbitrators shall be binding upon me without recourse to any other judicial or other tribunal. I further agree that liability shall in no case exceed $15,000.00, and that I shall post in advance a bond to cover the costs of arbitration and the counsel fees of Hallmark Clinic, its physician(s), or other personnel."

Plaintiff challenges the entire paragraph as an unenforceable adhesion contract contrary to the public policy of North Carolina, the place of its execution.

The terms in paragraph 13 providing for an absolute bar to recovery of damages in excess of $15,000, and to any recovery at all should the patient fail to notify Dr. Hoke of her claim within thirty days of the date the form is executed, are, in substance, clear attempts to limit liability by a contract abrogating rights otherwise available to the aggrieved patient. The limitations imposed have no necessary relationship to the nature of the individual patient's claim: the limit on recovery applies by its terms to all claims; the thirty-day "limitations" period runs from the date of the execution of the form and provides no exception for matters not discoverable within that period.

■ The general rule in North Carolina is that contracting parties may, with a few exceptions, agree to limitations on liability for ordinary negligence, with the agreements being strictly construed against the party relying on the agreement. *Hall v. Sinclair Refining Co.,* 242 N.C. 707, 89 S.E.2d 396 (1955). All such otherwise valid limiting agreements are void as contrary to public policy, however, when they relate to transactions affected with a substantial

public interest or colored by inequality of bargaining power:

"[A] public service corporation or a public utility cannot contract against its negligence in the regular course of its business or in performing one of its duties of public service. The limitation is likewise uniformly applied to certain relationships such as that of master and servant. . . .

"Also, by the weight of authority the general limitation on the contractual right to bargain against liability for negligence embraces the principle 'that a party cannot protect himself by contract against liability for negligence in the performance of a duty of public service, or where a public duty is owed, *or public interest is involved, or where public interest requires the performance of a private duty.*'

\* \* \* \* \* \*

"Also, closely related to the public policy test of determining the validity of these exemption clauses is the factor, applied in some decisions, of giving consideration to the comparable positions which the contracting parties occupy in regard to their bargaining strength, *i. e.*, whether one of the parties has unequal bargaining power so that he must either accept what is offered or forego the advantages of the contractual relation in a situation where it is necessary for him to enter into the contract to obtain something of importance to him which for all practical purposes is not obtainable elsewhere."

242 N.C. at 710, 89 S.E.2d at 398 (emphasis added.)

There are no North Carolina cases analyzing the application of North Carolina's public policy against exculpatory clauses to agreements between doctor and patient. The thrust of the cases in other jurisdictions, however, appears to be that such agreements are unenforceable, at least where the party relying on the exculpatory clause (a) is significantly regulated by public authority, (b) holds himself out to the public as willing to perform the sort of services subject to such regulation, (c) pur-

ports to be capable of performing those services in conformity with the standard of care established in the community, (d) provides the services in an atmosphere suggestive of unequal bargaining power, and (e) subjects the patient to precisely the sort of risk made the subject of the exculpatory agreement. *See generally* Annotation, Validity and Construction of Contract Exempting Hospital or Doctor from Liability for Negligence to Patient, 6 A.L.R.3d 704 (1966).

The public interest in and extensive regulation of the defendant and the medical services he provides is beyond question. All medical doctors are subjected to legislatively mandated licensing requirements, including an established code of professional and personal conduct. *See* N.C.G.S. §§ 90–1 to 90–21.5 (1975 & Cum.Supp.1977). The standard of care applicable to medical malpractice actions in this state is declared by statute. *See* N.C.G.S. § 90–21.12 (Cum. Supp.1977). Beyond this more general regulation of the medical profession, the North Carolina legislature has singled out abortion practice in the state as deserving of its own special regulation. *See* N.C.G.S. § 14–45.1 (Cum.Supp.1977).

In addition to these regulations, the state legislature has, albeit indirectly, stated its desire that impediments to complete recovery for medical malpractice not be readily inferred. N.C.G.S. § 90–21.14 (Cum.Supp. 1977), which provides relief from liability for persons providing emergency medical services when the need is apparent, states in part:

"Nothing in this section shall be deemed or construed to relieve any person from liability for damages for injury or death caused by an act or omission on the part of such person while rendering health care services in the normal and ordinary course of his business or profession."

The depositions of the parties provide the only information of record on the issue of relative bargaining power. Plaintiff Tatham testified that she was referred specifically to defendant's Hallmark Clinic (where

the abortion was performed) by a counseling center in her home town in South Carolina (Tatham deposition at 13–14). She did not remember reading the back of the form when she signed it and could not recall its contents (Tatham deposition at 25–27, 46). Dr. Hoke stated in his deposition that he requires all prospective patients to sign the form and would not provide services in its absence (Hoke deposition at 13–14).

These facts alone would not suffice to justify a declaration that the agreement is an unenforceable adhesion contract. Here, however, the contract is a *contract for exculpation* from liability of an enterprise that is heavily regulated by state authorities who have demonstrated the public interest in the activity and stated a desire to leave the regulated entities amenable to private suit as well as public review.

■ The controlling law in North Carolina appears to be that a clear and significant inequality of bargaining power must be demonstrated to support invalidation of a limitation of liability clause in the private sector, cf. *The Gas House, Inc. v. Southern Bell Tel. & Tel. Co.,* 289 N.C. 175, 183–86, 221 S.E. 499 (1976), but that a much lesser showing, if any, is required when the entity seeking exculpation is heavily infected with a public interest. *See Hall v. Sinclair Refining Co., supra; Crowell v. Eastern Air Lines,* 240 N.C. 20, 29–30, 81 S.E.2d 178 (1954) (passenger who was not aware of time limits for filing personal injury claim printed on airline ticket held not bound by those limits).

The thirty-day notice of claim provision and the absolute damage limit of $15,000 are, in my opinion, unenforceable under North Carolina law as contrary to public policy.

The arbitration provisions of the agreement are also contained exclusively in paragraph 13 and therefore are enforceable only if they are severable from the exculpatory provisions declared to be contrary to public policy. To be separable under North Carolina law, the arbitration provision must be "in no way dependent upon the enforcement of the illegal provision[s] for [its] va-lidity" and "capable of being construed divisibly." *In re Port Publishing Co.,* 231 N.C. 395, 397–98, 57 S.E.2d 366, 367 (1950), *restated in Gore v. Ball,* 279 N.C. 192, 182 S.E.2d 389 (1971). By its terms, the arbitration provisions contemplate arbitration only of claims filed within the thirty-day time limit for filing claims; the arbitrator's decision is subordinated to the $15,000 recovery ceiling imposed. The contract contains no severability clause; there is nothing to indicate that the court might extend the jurisdiction of the arbitrators to claims, such as plaintiff's, "filed" more than thirty days after treatment, expand the arbitrator's authority to award damages in excess of the $15,000 ceiling, and thereby construct an alternative proceeding even remotely resembling what either of the contracting parties might have contemplated. The taint of the invalid exculpatory provisions fundamentally affects the course of any supposed arbitration proceedings, and therefore necessitates that the contract language mandating those proceedings be set aside.

The court need not determine whether the arbitration provision, were it separable, is authorized by the Uniform Arbitration Act as enacted and amended in North Carolina (*Compare* N.C.G.S. § 1–567.2 (Cum. Supp.1977) *with* Uniform Arbitration Act § 1, *reprinted in* 7 Uniform Laws Annotated 4) or exists only under principles of common law arbitration, which would mandate the continuance of this action notwithstanding the existence of a binding arbitration agreement. *See Skinner v. Gaither Corp.,* 234 N.C. 385, 67 S.E.2d 267 (1951).

■ Defendant's motion to join York General Hospital as a third-party defendant should be denied. If relevant medical records are in the custody of York General Hospital, the defendant may gain access to those records either by pretrial deposition and subpoena *duces tecum,* or by subpoena of the records for trial as allowed under Federal Rules of Civil Procedure rule 45. However, any deposition to be had of any records custodian of York General Hospital shall be allowed only if conducted at a place convenient to the deponent.

IT IS THEREFORE ORDERED:

1. Third-party defendants' motions to dismiss for failure to state a claim on which relief can be granted are allowed.

2. Defendant's motions to join under rule 19 those persons impleaded as third-party defendants are denied.

3. Defendant's motion to join York General Hospital as a third-party defendant is denied.

4. Defendant's motions to dismiss or stay this action are denied.

5. If defendant needs additional time to conduct limited discovery into the records of York General Hospital in conformity with the requirements set out in this order, he should notify the court of that fact within ten (10) days of the filing date of this order. The case will stand for trial when reached on the jury trial calendar.