KATHY LOUISE DAVIS v. LAWRENCE JULIUS TAYLOR

No. 8515DC769

(Filed 3 June 1986)

1. **Divorce and Alimony § 27; Attorneys at Law § 7.1— child support contingent fee contract—not allowed**

   A contingent fee contract for the payment of legal fees as a percentage of a child support recovery was void as against public policy because it could disrupt court determined support schedules and because statutory fees were available. N.C.G.S. § 50-13.6.

2. **Divorce and Alimony § 27; Attorneys at Law § 7.1— child support—attorney fee contracts contingent—no court awarded fees—no recovery in quantum meruit**

   The portion of an attorney fee contract in a paternity and child support case which was not contingent and not void was not severable and enforceable because the contingent fee provision permeated the entire agreement and was the essence of the contract. Moreover, the attorneys were not allowed to recover their fees in *quantum meruit* because recovery of fees would permit them to benefit directly from services rendered pursuant to an illegal contract and would compromise the main policy of the fee statute.

3. **Divorce and Alimony § 27— attorney fees—failure to make specific findings—reviewable on appeal**

   The trial court's failure to make specific findings regarding attorney fees and any miscalculation in the findings in an action for paternity and child support were reviewable on appeal despite defendant's failure to request specific or different findings. Appellee's argument that the court erred in favor of the appellant did not alter the fact that the court's figures were incorrect and must be vacated.

4. **Divorce and Alimony § 27— award of attorney fees—vacated on other grounds—must be supported by detailed accounting**

   Where an order requiring defendant to pay attorney fees in an action for paternity and child support was remanded on other grounds, the court noted that any award of fees on remand must be supported by a more detailed accounting of the nature and purpose of the work performed by each attorney, clerk, and paralegal where an excessive amount of time was spent researching and preparing a novel argument and it was clear that plaintiff's attorneys intended ultimately to charge their hours to defendant.

APPEAL by defendant from *Hunt, Judge*, order entered orally 20 February 1985 and from *Paschal, Judge*, order entered 3 October 1983 in District Court, ORANGE County. Heard in the Court of Appeals 5 December 1985.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, by G. Nicholas Herman, Douglas Hargrave, and Steven A. Bernholz, for plaintiff appellee.*

*Glover & Petersen, P.A., by James R. Glover; Long & Long, by Lunsford Long; and Midgette, Higgins, Frankstone & Graves, by Thomas D. Higgins III, for defendant appellant.*

BECTON, Judge.

This appeal arose from two orders awarding attorneys' fees and court costs totaling $45,070.24 against Lawrence Julius Taylor, the defendant in a paternity and child support action.

I

On 28 March 1980, Kathy Louise Davis gave birth to Whitney Taylor Davis. At that time, Kathy Davis and Lawrence Taylor were students at the University of North Carolina. After the birth of Whitney, Davis and Taylor discussed whether Taylor would pay to support Whitney. Davis was receiving public assistance through the Orange County Department of Social Services, and she was represented by attorney Bruce Elmore of Asheville. After the attorneys began negotiations, Taylor began playing football for the New York Giants. Although attorney Elmore and Taylor's attorneys reached a tentative agreement on child support, Davis was referred to attorney Geoffrey Gledhill by an Orange County Child Support Enforcement officer. Gledhill, a partner in the firm Coleman, Bernholz, Dickerson, Bernholz, Gledhill & Hargrave, had a contract with Orange County to act as attorney for the Child Support Enforcement Program in proceedings under N.C. Gen. Stat. Sec. 110-135 (1985 Cum. Supp.).

Davis and attorney Gledhill met on 5 February 1982. On 10 February 1982, Davis signed a contingent-fee contract to have Gledhill's firm privately represent her in establishing paternity and obtaining child support for Whitney. The contract provided that the firm would receive one-third of any award that was to be paid less frequently than monthly and that, in addition, the firm

would retain all attorneys' fees awarded to Davis by agreement or by court order.

On 7 April 1982, Davis filed a paternity action against Taylor seeking child support, payment of public assistance funds received by Davis, and attorneys' fees. Taylor answered on 3 May 1982 denying paternity. On 5 May 1983, after approximately one year of extensive discovery, Taylor admitted paternity in an amended response to Davis' request for admissions. Partial summary judgment on this issue was entered orally on 16 May 1983.

Davis filed a motion on 23 June 1983 for temporary child support and attorneys' fees pending trial, and requested a pre-trial conference in aid of discovery. She also served additional discovery requests on Taylor. A hearing was held on 5 July 1983 before the trial court. Based on evidence presented at that hearing, Judge Paschal signed an order on 3 October 1983 ordering Taylor to pay attorneys' fees in the amount of $18,500 for services rendered to Davis from 10 February 1982 through 4 July 1983. Taylor's interlocutory appeal from this order was dismissed by this Court in Case No. 8415DC101, filed 18 September 1984. Taylor's petition for certiorari to this Court was denied on 24 September 1984.

Some time after September 1984, Davis' contingent-fee contract with her attorneys was changed to a non-contingent-fee contract in response to this Court's decision in *Thompson v. Thompson*, 70 N.C. App. 147, 319 S.E. 2d 315 (4 Sept. 1984), *rev'd on other grounds*, 313 N.C. 313, 328 S.E. 2d 288 (1985).

On 18 and 19 February 1985, the trial court held a trial without a jury to settle the issues of child custody and child support. On 20 February 1985, the court heard evidence on Davis' claim for attorneys' fees for the period 5 July 1983 through 19 February 1985. In an order orally rendered on 20 February 1985 and signed 3 April 1985, Judge Hunt ordered Taylor to pay $24,565 in attorneys' fees and $2,005.24 for court costs advanced to Davis by her counsel.

Taylor appeals from the two orders awarding attorneys' fees and expenses totaling $45,070.24 to Davis' counsel. With regard to the 3 October 1983 order, Taylor argues that the award is not supported by the findings of fact. He contends that the amount

awarded was nearly double the amount the court found to be reasonable; that it includes fees for services related to custody and support without a finding that Davis was acting in good faith; and that the court's conclusions of law were not supported by detailed findings or by the evidence. With regard to the order signed 3 April 1985 covering the period after 4 July 1983, Taylor argues that the award improperly includes fees for services rendered by an associate who had left the firm before 5 July 1983; that it includes time mistakenly attributed to certain attorneys through arithmetic error; and that the court erred in concluding, without a detailed accounting, that 668 hours allegedly spent by Davis' counsel on this case were reasonable and necessary. Lastly, Taylor argues that no fees should have been awarded for services rendered pursuant to the contingent-fee contract.

[1]   We hold that the contingent-fee contract was void as against public policy and that, under *Thompson v. Thompson*, 313 N.C. 313, 328 S.E. 2d 288 (1985), plaintiff's attorneys cannot recover fees for the reasonable value of services rendered pursuant to this contract. Therefore, the 3 October 1983 order is vacated, and the 3 April 1985 order is vacated and remanded to exclude fees for the period covered by the void contract. The 3 April 1985 order is also remanded for the trial court to correct errors in accounting for the hours spent by plaintiff's attorneys and to document in accordance with this opinion the hours that were reasonable and necessary to prosecute this case after the period covered by the void contract.

## II

In *Thompson v. Thompson*, 70 N.C. App. 147, 157, 319 S.E. 2d 315, 321-22 (1984), *rev'd on other grounds*, 313 N.C. 313, 328 S.E. 2d 288 (1985), this Court held that a contract for legal services contingent upon securing a divorce or "contingent in amount upon the amount of alimony and/or property awarded is void as against public policy." This Court considered and relied primarily upon three broad policies. First, there is a policy in this State against contracts that "encourage or bring about a destruction of the home." *Id.* (quoting *Matthews v. Matthews*, 2 N.C. App. 143, 162 S.E. 2d 697 (1968) ). This policy has no bearing in the case at bar.

Second, the *Thompson* Court relied on the lack of need for contingent-fee contracts in divorce actions. The Court cited N.C.

Gen. Stat. Secs. 50-13.6 and 50-16.4 (1984) in a footnote as examples of "a statutory mechanism whereby a wronged [person] seeking representation in a domestic action may be assured the financial means by which to employ an attorney." 70 N.C. App. at 155 n. 2, 319 S.E. 2d at 321.

The third policy consideration identified in *Thompson* was that the public, the legal profession and the bench would suffer if contingent-fee contracts became customary in divorce cases because clients are often distraught and charges of undue influence and overreaching would become frequent. We are not persuaded that this policy is any more relevant in the case at bar than it is, for example, in wrongful death actions, involving distraught plaintiffs; contingent-fee contracts routinely are allowed in those cases. *See Randolph v. Schuyler*, 284 N.C. 496, 504, 201 S.E. 2d 833, 837-38 (1974). *See generally In re Foreclosure of Cooper*, 81 N.C. App. 27, 344 S.E. 2d 27 (1986).

A

The only policy from *Thompson* relevant in the case at bar is that statutory legal fees are available. But there is an additional policy applicable in actions seeking child custody and support under N.C. Gen. Stat. Sec. 50-13.5 (1984).

A contingent-fee contract to pay counsel some percentage of the amount recovered for support of a child alters and disrupts the judicial formulation and structuring of the support award. The trial court is required to carefully consider myriad factors, needs and restrictions in determining the schedule of support payments necessary and reasonable under the circumstances of each case. If the party seeking support for a child has the financial means to obtain legal counsel for this purpose, the payment of the legal fee will not affect the child's stream of income which the court seeks to guarantee. For the party seeking child support who cannot afford counsel, the legislature provided for the court to award reasonable fees. The statute was intended to make it possible for an interested party to bring an action to protect the interests of the child by meeting the opposing party on fair terms. *Stanback v. Stanback*, 270 N.C. 497, 155 S.E. 2d 221 (1967). To allow a contingent-fee contract based on a percentage of a child support award would upset the equilibrium between judicially-monitored support schedules and judicially-monitored awards

of attorneys' fees for plaintiffs who could not otherwise afford adequate legal representation. By allowing the trial court to determine the amount a party must pay in support and the amount reasonable for legal expenses, children's interests are protected without disturbing the incentive for attorneys to represent plaintiffs whose only "assets" are their rights to receive child support payments.

We are mindful that not all contingent-fee contracts are destructive of public policies. In many cases, the contingent fee provides the only possible means by which poor plaintiffs may seek legal redress. The contingent-fee arrangement protects many plaintiffs against incurring debts for legal services without a corpus from which to satisfy them. And the incentive provided by tying the fee to the recovery encourages more vigorous advocacy, often of the rights of the poor and the disadvantaged. The contingent fee is a valuable alternative to the hourly fee, and the broad arguments asserted against all contingent-fee contracts are unpersuasive. *See In re Cooper.*

Even in some domestic law actions, contingent-fee contracts may not violate public policy. For example, contingent-fee arrangements generally are permitted in actions by one spouse to recover separate property from another or to settle property rights among them. 7 Am. Jur. 2d *Attorneys at Law* Sec. 257 and cases cited therein (1980). And a contingent-fee contract for representation in an equitable distribution proceeding, at least when it does not involve representation in a divorce action, is not against public policy. *In re Cooper.* But these examples do not involve legal proceedings for which statutory legal fees may be awarded by the court. Moreover, they do not involve awards that are carefully designed to provide support for a minor over a period of years.

In sum, contingent-fee contracts for the payment of legal fees as a percentage of a child support recovery are void as against public policy because they may disrupt court-determined support schedules and statutory fees are available.

### B

[2] The question now arises whether, even though a portion of the contract in the case at bar is void, the remainder of the con-

tract is severable from it and therefore enforceable. Davis argues that the portion contingent upon the recovery of child support is separate and distinct from the portion providing for the additional payment of all court-awarded fees.

We recognize that when a portion of a contract is void as against public policy, the remainder of that contract may still be enforceable to the extent it is severable from, and not dependent in its enforcement upon, the void portion. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 658, 194 S.E. 2d 521, 531-32 (1973); *see also In re Port Publishing Co.*, 231 N.C. 395, 57 S.E. 2d 366 (1950). "At least this is true where the illegal provision is clearly separable and severable from the other parts which are relied upon and does not constitute the main or essential feature or purpose of the agreement." *Rose*, 282 N.C. at 658, 194 S.E. 2d at 532 (quoting 17 Am. Jur. 2d *Contracts* Sec. 230 (1964)).

The contract between Davis and her attorneys provided in paragraph 1 for the payment of a fee equal to one-third of "the gross amount of money (including the fair market value of any property other than money which may be recovered) which attorneys may recover for the support and maintenance of Whitney Talor [sic] Davis," excluding payments ordered to be made on a monthly (or more frequent) basis. In paragraph 2, the contract provided:

> In addition to the fee described in number 1 herein, attorneys shall also receive any and all amounts which may be awarded to them for their services by agreement or order of the court for their representation of me in this matter.
>
> It is further understood and agreed between client and attorneys that both believe, given the circumstances now existing and likely to exist in the future as determined by the facts known now, that it is in the best interest of Whitney Taylor Davis for any child support obligation obtained to be structured such that the bulk of the support and maintenance obtained be in a lump sum or a series of lump sums. Attorneys, with the consent and approval of client, expect to pursue a course of action to obtain a lump sum child support obligation.[1]

---

1. It is unlikely that a contingent fee and a court-awarded fee for the reasonable value of an attorney's services may both be accepted by an attorney for

In *In re Port Publishing Co.*, the Supreme Court held that an illegal "closed shop" provision in a labor contract was not the essential purpose of the agreement and that it was severable from the provisions concerning working conditions, wages, hours, training, overtime, vacations and severance pay. 231 N.C. at 398, 57 S.E. 2d at 368. In contrast, the two contract provisions in the case at bar both concern compensation for the same legal services. When the contract was executed, there would have been no certainty that a court would award any fees in addition to the percentage fee the attorneys expected to recover. From the nature of the original contract, it appears unlikely that Davis' attorneys would have taken the case for the potential court-awarded fees alone. And it is the stated purpose of the attorneys and the client to recover a lump sum award, from which a percentage fee would be derived. We conclude that the contingent-fee provision "permeates the entire agreement." *In re Port Publishing Co.*, 231 N.C. at 398, 57 S.E. 2d at 368. It is the essence of the contract. Therefore, the entire contract is void as against public policy.

Our decision is directly supported by the decision of the Fifth Circuit Court of Appeals in *Singleton v. Foreman*, 435 F. 2d 962, 969-70 (1970). In *Singleton*, the Court held that the contingent-fee portion of a contract for legal services in a divorce action was void as against public policy. The Court also held that an additional provision for an initial cash retainer was not severable from the illegal contingent-percentage-fee provision, even though it was neither contingent upon nor tied to a percentage of the recovery.

## C

Davis argues that the validity of the contract is irrelevant to recovery of attorneys' fees under G.S. Secs. 6-21 and 50-13.6. We disagree. In *Thompson*, this Court held that although the contingent-fee contract was void as against public policy, the attorneys were entitled to recover the reasonable value of their services in *quantum meruit*, partly because the public policy was

---

the same legal services without some set-off. *Cf. Sullivan v. Crown Paper Board Co.*, 719 F. 2d 667 (3d Cir. 1983) (attorney's fees in civil rights cases). Because the issue is not before us, we express no opinion as to whether parties may contractually agree to such an arrangement.

announced after the contract had been executed. 70 N.C. App. at 158, 319 S.E. 2d at 322. In reversing this Court's decision on a separate issue, the Supreme Court also said:

> Although in view of our disposition of the case a decision on the point is not necessary, we note that it is generally held that if there can be no recovery on an express contract because of its repugnance to public policy, there can be no recovery on *quantum meruit. Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968) (unlicensed contractor). *Insulation Co. v. Davidson County*, 243 N.C. 252, 90 S.E. 2d 496 (1955) (county commissioner contracting for repair work for county).

313 N.C. at 314-15, 328 S.E. 2d at 290. Stated differently, the law will not allow one party to benefit directly or indirectly from a contract void as against public policy. *Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C. App. 249, 254, 262 S.E. 2d 705, 709 (1980).

Davis argues that because the award of statutory attorneys' fees does not depend upon the existence of a contract, the illegality of the contract is irrelevant. According to Davis, *Thompson* is not applicable because the award in the case at bar is not based on the doctrine of *quantum meruit*.

Absent clear statutory language to the contrary, we will not presume that the legislature, in enacting the attorneys' fees statutes, intended to allow the recovery of statutory fees when to do so would violate the public policy of this State. Recovery of statutory fees by Davis' attorneys would permit them to benefit directly from services rendered pursuant to an illegal contract, and, therefore, to benefit indirectly from the illegal contract. Moreover, to allow recovery under the statutes would subvert the policy that there be no recovery in *quantum meruit* for services rendered pursuant to a contract void as against public policy. Both methods of recovery compensate for the reasonable value of services rendered. The law refuses to assign positive value to services rendered pursuant to an illegal contract, particularly when, as here, the party to the contract seeking recovery is an officer of the court, invested with the public trust.

The award of statutory fees for services rendered under the contract in the case at bar would also compromise the main policy

of the fee statute—to protect the interests of children involved in custody and support cases. As mentioned above, the contract itself violates this policy. Should we allow recovery under a statute for services rendered pursuant to a contract which violates the policy behind the same statute? The statute itself limits recovery to "reasonable" fees. Although the amount of a fee is generally in the discretion of the trial court, fees for services rendered pursuant to a contract void as against public policy are unreasonable as a matter of law.

We do not engraft onto the statutory procedure a new requirement that the fee must be for services rendered pursuant to a valid contract. No contract is required. But when the transaction is tainted by the execution of an illegal contract for the legal services, the law simply will not permit recovery for those services. A trial court has no discretion to award statutory legal fees for services rendered in a child custody and support action pursuant to a contract void as against public policy.

The illegal contract in the case at bar was in effect from 10 February 1982 to some time after September 1984. Therefore, the first order, awarding attorneys' fees for the period 10 February 1982 through 4 July 1983, is vacated. The second order, awarding fees for the period 5 July 1983 through 19 February 1985 is vacated and remanded for the trial court to determine the date on which the illegal contract was rescinded or replaced with a valid contract. Statutory legal fees, consistent with Part III, *infra,* may be awarded for the period beginning after the illegal contract was withdrawn.

### III

[3] Taylor argues that certain findings of fact in the second order are not supported by the evidence. Specifically, Taylor argues that the award of fees for the period 5 July 1983 through 19 February 1985 (1) includes payment for services attributed to an associate, Sharon Ellis, who had left the firm before 5 July 1983; (2) contains an error in the mathematical calculation of the time attributed to the partners; and (3) was insufficiently detailed to support the finding that the hours spent were reasonable and necessary to prosecute the case.

---

---

Davis argues that the court's failure to make specific findings and any miscalculation in the findings are not reviewable on appeal because Taylor failed to request specific or different findings. This argument is without merit. Rule 52 of the North Carolina Rules of Civil Procedure applies:

> (c) *Review on appeal.* — When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment, or a request for specific findings.

The cases cited by Davis were decided before Rule 52 was enacted in 1967. *See, e.g., Logan v. Sprinkle*, 256 N.C. 41, 123 S.E. 2d 209 (1961); *Griffin v. Griffin*, 237 N.C. 404, 75 S.E. 2d 133 (1953). *But see S. J. Groves & Sons v. State*, 50 N.C. App. 1, 68-69, 273 S.E. 2d 465, 501 (1980) (relying on *Logan*, and failing to mention Rule 52), *disc. rev. denied*, 302 N.C. 396, 279 S.E. 2d 353 (1981).

### A

It is not disputed that associate attorney Sharon Ellis did not render services on behalf of Davis after 4 July 1983. Yet the trial court found in its second order that she had worked 67.45 hours during the period 10 February 1982 through 19 February 1985, and found in its first order that she had worked 39.5 hours during the period 10 February 1982 through 4 July 1983. The difference, 27.95 hours, is the time attributed to Sharon Ellis for the period after 4 July 1983. This error is significant and must be corrected on remand.

### B

Taylor also contends that the court miscalculated the time attributable to the four partners who worked on the case after 4 July 1983. The court found in the second order that partners had spent a total of 311.6 hours on the case from 10 February 1982 through 19 February 1985, and it found in the first order that partners had spent 111.7 hours from 10 February 1982 through 4 July 1983. This leaves 199.9 hours attributable to partners after 4 July 1983, but the court found that partners had spent 209.5

hours for this period. Taylor asserts that the difference is a mathematical error.

Davis argues that there was no miscalculation; rather, there was "an inadvertent understatement of the [total] time expended by the partners." According to this argument, the correct figures are the 111.7 hours spent by the partners on the first part of the case and the 209.5 hours spent on the second part. Thus, the total was inadvertently understated and should have been 321.2 instead of 311.6. Davis argues that the testimony of one of the partners that 311.6 was the total of the partners' hours "may have been an understatement." In the alternative, Davis argues, any additional hours inadvertently attributed to the partners were "absorbed" by the hours spent by partners drafting the trial court's order on the court's instructions.

The appellee misunderstands the purpose of requiring findings of fact. In order to effectively review the trial court's exercise of discretion, this Court must have before it specific findings revealing the basis for the trial court's conclusions. When the findings fail to show the basis for the judgment or reveal an error in calculation, whether it results in an overstatement or an understatement, the case must be remanded for correction. Davis' argument that the court erred in favor of the appellant does not alter the fact that the court's figures are incorrect and must be vacated.

C

[4]   Taylor's final contention is that the trial court's order awarding attorneys' fees must be supported by more detailed findings regarding the nature and purpose of the legal work performed by each attorney. The second order, pertaining to the nineteen months beginning in July 1983, awarded fees for over five hundred hours spent by nine attorneys, four student law clerks, and one paralegal. The court found that this was reasonable, considering:

> (a) The novel and difficult legal issues presented in this case, including Plaintiff's claim for a lump sum award of child support and the detailed nature and complexity of Defendant's income sources;

(b) the difficulty in establishing Defendant's standard of living and the reasonable needs of the parties' minor child through age 18, which necessitated expert analysis and testimony from an economist and child psychologist; and

(c) the need for Plaintiff's Counsel to engage in extensive discovery and obtain Court orders enforcing discovery requests.

As Taylor notes, neither paternity nor the admissibility of voluntary blood test results was an issue during the period beginning in July 1983. One of the partners, Mr. Hargrave, testified that in the context of the 668 hours spent on the case, only a small portion of the time was spent on discovery. Taylor argues that an excessive amount of time was spent researching and preparing the novel argument that it would be in the best interest of the child to receive a lump sum for future child support: there was no support for the argument in this or any other State; the court disallowed nearly all expert witness expenses for plaintiff's psychologist and economist as irrelevant on this issue; and the entire theory is contrary to the basic legislative purpose of providing for periodic future support payments for minors.

The attorneys for Davis sought to charge an extremely large number of hours to their adversary. It is clear from their original contract with Davis that they intended ultimately to charge their hours to Taylor. This presented great danger that "billing judgment" would suffer; there is less incentive to exclude unnecessary or unreasonable hours when the adversary, as opposed to the client, will foot the bill. *See Hensley v. Eckerhart*, 461 U.S. 424, 76 L.Ed. 2d 40, 103 S.Ct. 1933 (1983).

We conclude that, particularly because there were errors in the calculation of the hours, any award of fees on remand must be supported by a more detailed accounting of the nature and purpose of the work performed by each attorney, clerk and paralegal. The court should consider whether the number of people working on the case was excessive and should exclude redundant hours, *see Allen v. Allen*, 65 N.C. App. 86, 308 S.E. 2d 656 (1983), *disc. rev. denied*, 310 N.C. 475, 312 S.E. 2d 881 (1984), and it should list the work performed so that an appellate judge may be certain that only hours reasonably necessary to prosecute the case were charged. *See Owensby v. Owensby*, 312 N.C. 473, 476, 322 S.E. 2d

Davis v. Taylor

772, 774-75 (1984). The suggestion by Davis' attorneys that they cannot provide a more detailed accounting does not reduce the requirement; rather, it bolsters the fear that there may have been a disregard for the legitimate expectation by Taylor that he is not subsidizing frivolous and speculative research projects. To allow recovery on the facts of this case without a detailed accounting would be an abuse of discretion.

We recognize that this case involved a substantial commitment of time. We also note and agree with the trial court's finding that Davis' attorneys were skillful. And we will defer to the trial court's sound discretion in determining the reasonably necessary hours on remand.

IV

The order awarding legal fees for the period 10 February 1982 through 4 July 1983 is vacated. The order awarding fees for the period 5 July 1983 through 19 February 1985 is vacated and remanded. The trial court may award fees for services that were rendered after the original contingent-fee contract was withdrawn. The award must exclude the hours of Sharon Ellis, and it must contain detailed findings that are supported by an accurate and detailed accounting of the hours spent and the work performed by each attorney, law clerk and paralegal.

For the reasons set forth above, the orders of the trial court are vacated and remanded for proceedings consistent with this opinion.

Order of 3 October 1983 — vacated.

Order of 3 April 1985 (orally rendered 20 February 1985) — vacated and remanded.

Judges WEBB and COZORT concur.