ROBINSON, BRADSHAW & HINSON, P.A., Plaintiff v. BONITA HARRIS SMITH and OLLEN BRUTON SMITH, Defendants

No. COA97-514

(Filed 30 April 1998)

**1. Attorneys at Law § 56 (NCI4th)— equitable distribution— contingent fee contract—child custody and divorce— hourly rate—not public policy violation**

A financial arrangement whereby a law firm had a contingent fee contract with a client for an equitable distribution claim and a separate hourly rate contract for child custody, support and final divorce claims did not itself violate public policy.

**2. Attorneys at Law § 56 (NCI4th)— equitable distribution— contingent fee contract—fee upon reconciliation—violation of public policy**

A portion of a contingent fee contract for representation of the wife in an equitable distribution action that provided that the law firm would be paid 150% of its normal hourly charge in the event that the law firm's services were terminated because the wife reconciled with the husband and that the wife must make satisfactory financial arrangements with the law firm as a condition of any reconciliation was void as against public policy. However, this portion is severable and does not prohibit enforcement of the remainder of the contract.

ROBINSON, BRADSHAW & HINSON v. SMITH

[129 N.C. App. 305 (1998)]

**3. Attorneys at Law § 54 (NCI4th)— equitable distribution— contingent fee contract—value of recovery—meeting of minds**

A contingent fee contract in an equitable distribution action in which the fee was to be based upon "the value of the recovery" provided a sufficient definition for the parties to the contract to have had a meeting of the minds with respect to the fee.

**4. Attorneys at Law § 56 (NCI4th)— equitable distribution— contingent fee contract—prohibition of communication by client—public policy violation**

A provision in a contingent fee contract for an equitable distribution action which prohibited the wife from communicating with the husband concerning her equitable distribution claim was void as against public policy for inhibiting compromise and settlement. However, this provision is severable and does not prohibit enforcement of the remainder of the contract.

**5. Attorneys at Law § 62 (NCI4th)— equitable distribution— contingent fee contract—settlement by another attorney— discharge after settlement—recovery of fee under contract**

A law firm was entitled to recover under its contingent fee contract to represent the wife in an equitable distribution action, rather than upon the basis of *quantum meruit*, after another attorney retained by the wife negotiated a settlement of the wife's equitable distribution claim where the law firm had no knowledge that another attorney was working out a settlement for the wife; the firm continued to produce work for the wife, and the wife obtained information from the firm which was used by the other attorney in the settlement discussions; and the wife did not actually discharge the law firm until after the settlement was finalized.

**6. Attorneys at Law § 54 (NCI4th)— equitable distribution— contingent fee contract—no breach of fiduciary duty**

The record did not support a claim that a law firm which represented the wife on a contingent fee basis in an equitable distribution action breached its fiduciary duty to its client during litigation by placing its interest in fees before the client's interest since the law firm had an incentive to achieve the highest judgment it could obtain for the client because the more money the client obtained, the more the firm would receive on its own behalf.

ROBINSON, BRADSHAW & HINSON v. SMITH

[129 N.C. App. 305 (1998)]

**7. Attorneys at Law § 61 (NCI4th)— equitable distribution— contingent fee contract with wife—tortious interference by husband—summary judgment improper**

The trial court erred by entering summary judgment for the husband in a law firm's action for tortious interference with its contingent fee contract with the wife in an equitable distribution action where the husband entered into a settlement agreement with the wife without the law firm's knowledge which provided that the husband would pay the wife's legal expenses, that the wife would not reach any agreement with the law firm concerning the amount of its fees, and that she would cooperate with the husband in defending any claim by the law firm, and genuine issues of material fact existed as to the husband's intent and motive.

**8. Attorneys at Law § 61 (NCI4th)— equitable distribution— contingent fee contract—tortious interference with economic advantage—summary judgment improper**

The trial court erred by entering summary judgment for the husband in a law firm's action for tortious interference with prospective economic advantage where the law firm had a contingent fee contract to represent the wife in an equitable distribution action; the husband entered into a settlement agreement with the wife without the law firm's knowledge which provided that the husband would pay the wife's legal fees and that she would not reach any agreement with the law firm concerning the amount of its fees; and genuine issues of material fact existed as to the husband's intent and motive.

**9. Appeal and Error § 345 (NCI4th)— summary judgment— exceptions and assignments of error**

The appellate rules do not require a party against whom summary judgment has been entered to place exceptions and assignments of error into the record on appeal. However, without exceptions and assignments of error, the notice of appeal to a summary judgment is necessarily limited to whether the trial court's conclusions were correct.

Appeal by plaintiff and defendants from judgment entered 15 November 1996 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 January 1998.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr., William C. Scott and Allison M. Grimm, for plaintiff appellant-appellee.*

*James McElroy & Diehl, P.A., by William K. Diehl, Jr.; and Adams Kleemeier Hagan Hannah & Fouts, by Trudy A. Ennis, for defendant appellant-appellee Ollen Bruton Smith.*

*Glover & Petersen, P.A., by James R. Glover, for defendant appellant-appellee Bonita Harris Smith.*

SMITH, Judge.

Plaintiff appellant Robinson, Bradshaw & Hinson, P.A. ("RB&H"), represented Bonita Harris Smith ("Mrs. Smith") in her equitable distribution claim for approximately 5-1/2 years pursuant to a contingency fee agreement. In addition, Mrs. Smith employed RB&H on an hourly basis to represent her in claims for child custody, support, and final divorce against Ollen Bruton Smith ("Mr. Smith"). RB&H obtained for Mrs. Smith a judgment in excess of $15.5 million on the equitable distribution claim. Mr. Smith appealed that decision to this Court and to the North Carolina Supreme Court. *See Smith v. Smith,* 111 N.C. App. 460, 433 S.E.2d 196, *disc. review denied,* 335 N.C. 177, 438 S.E.2d 202 (1993), *reversed in part on other grounds,* 336 N.C. 575, 444 S.E.2d 420 (1994). RB&H represented Mrs. Smith in both of these appeals.

This Court affirmed that part of the judgment addressing the classification and valuation of the property owned by the parties. However, this Court reversed the trial court's failure to consider defendant's receipt of dividend income after the date of separation as a factor in determining equitable distribution and in the court's calculation and treatment of the post-separation appreciation of the marital property, including the credit given defendant for his discharge of the second mortgage on the marital home. *Id.* This Court vacated that part of the judgment addressing distribution of the marital property and remanded the case to the trial court for a redetermination of what constitutes an equitable distribution of the marital property and entry of a new judgment. *See Smith,* 111 N.C. App. 460, 433 S.E.2d 196.

The North Carolina Supreme Court reversed part of this Court's decision and remanded on one issue. *Smith,* 336 N.C. 575, 444 S.E.2d 420. Our Supreme Court held, contrary to the opinion of this Court,

ROBINSON, BRADSHAW & HINSON v. SMITH

[129 N.C. App. 305 (1998)]

that the trial court was required to make written findings as to the character of the post-separation appreciation. *Smith*, 336 N.C. at 577, 444 S.E.2d at 422. The remainder of the Court of Appeals decision was undisturbed. *Id.*

On 28 June 1994, Mrs. Smith met with RB&H attorneys to discuss the status of her case. Mrs. Smith stated the minimum amount she would settle for was a net amount of $10 million after payment of all fees and expenses. Mrs. Smith authorized RB&H to attempt to settle the case for a lump sum payment of $13 million. In August 1994, RB&H conveyed this settlement offer to Mr. Smith's counsel. This offer was not accepted.

Beginning in late August or early September 1994, Mrs. Smith engaged in secret settlement negotiations with Mr. Smith. Unaware of these negotiations, RB&H continued preparing Mrs. Smith's case. On 9 September 1994, Mrs. Smith's friend Anna Lisa Johnson contacted attorney Pamela H. Simon ("Ms. Simon") to look over proposed settlement documents for Mrs. Smith. On 21 September 1994, Mrs. Smith again met with RB&H attorneys to discuss her remanded case without telling RB&H that she had retained the services of Ms. Simon to assist her. On 30 September 1994, Mrs. Smith and her friend Anna Lisa Johnson met with Ms. Simon. Mrs. Smith showed Ms. Simon a consent order proposed by Mr. Smith's counsel that purportedly resolved the equitable distribution case. RB&H never received a copy of this proposed consent order.

On 11 October 1994, RB&H, still unaware of Ms. Simon's representation of Mrs. Smith, faxed Mrs. Smith proposed stipulations for the upcoming hearing. Thereafter, Mrs. Smith faxed the stipulations to Ms. Simon, who used them in her work settling the domestic case. Additionally, Ms. Simon negotiated with Mr. Smith concerning fees owed by Mrs. Smith to RB&H, and the discharge of RB&H.

On 7 November 1994, Ms. Simon filed a lawsuit on behalf of Mrs. Smith in Iredell County for equitable distribution, without the knowledge of RB&H, even though the original case was still pending in Mecklenburg County. Ms. Simon informed Judge George T. Fuller, in the Iredell County court case, that a settlement between the two parties had been reached. On 15 November 1994, Mrs. Smith and Ms. Simon caused to be filed a voluntary dismissal of the case in Mecklenburg County at 12:09 p.m. No one attempted to contact RB&H prior to the filing of the dismissal. After the dismissal was filed, the discharge letter to RB&H was placed in a mailbox outside

of the Mecklenburg County Courthouse. Thereafter, a judgment was entered in the Iredell County case by Judge Fuller at 12:44 p.m. On 16 November 1994, RB&H received the discharge letter.

The final settlement in the Iredell County case provided that Mr. Smith would pay Mrs. Smith her portion of the marital estate, as agreed upon by the parties, plus Mrs. Smith's attorneys' fees and expenses. The settlement further provided that Mrs. Smith would cooperate with Mr. Smith in defending any claim by RB&H, and that Mrs. Smith could not reach any agreement with RB&H concerning the amount of its fees. Mr. Smith agreed to pay Mrs. Smith's legal and other expenses incurred during these proceedings, and further agreed to indemnify Mrs. Smith for any judgment RB&H might obtain against Mrs. Smith for attorneys' fees. However, Mr. and Mrs. Smith did not pay RB&H's fees or repay the expenses advanced by RB&H on Mrs. Smith's behalf.

On 23 January 1995, RB&H filed the instant suit against defendant appellees Mr. and Mrs. Smith. RB&H asserted claims for: (1) breach of contract against Mrs. Smith; (2) tortious interference with contract, including punitive damages, against Mr. Smith; and (3) tortious interference with economic advantage against Mr. Smith.

Defendants Ollen Bruton Smith and Bonita Harris Smith appeal from summary judgment holding defendants jointly and severally liable for $1,597,152.50 on the equitable distribution contingency fee contract between Robinson Bradshaw and Hinson, P.A., and Bonita Harris Smith, and for $43,995.50 plus judgment interest for attorneys' fees for the underlying domestic cases, entered by Judge Robert P. Johnston in Mecklenburg County Superior Court on 15 November 1996 incorporating part of a sealed judgment involving the actual settlement terms of the equitable distribution case entered 15 November 1994 by Judge George T. Fuller in Iredell County District Court. Robinson Bradshaw and Hinson, P.A., appeal from the same order entered by Judge Johnston granting summary judgment in favor of Ollen Bruton Smith on the tortious interference with contract and economic advantage claims, and from the calculation of damages for the equitable distribution contingency fee contract.

Before we address the merits of this case, we note that Mrs. Smith obtained the aid of new counsel Ms. Simon to complete her equitable distribution settlement before the termination of RB&H as her counsel of record. The comment to Rule 4.2 of the Rules of Professional Conduct provides that "a lawyer who does not have a

client relative to a particular matter [can consult] with a person or entity who, though represented concerning the matter, seeks another opinion as to his or her legal situation." Thus, it was not improper for Ms. Simon to advise Mrs. Smith concerning the equitable distribution case handled by RB&H. In addition, the comment to Rule 4.2 further provides that "[a] lawyer from whom such an opinion is sought should, but is not required to, inform the first lawyer of his or her participation and advice." In the instant case, Mrs. Smith requested that Ms. Simon refrain from telling RB&H about her representation. Rule 1.6 of the Rules of Professional Conduct provides that confidential information includes "information gained in the professional relationship that the client has requested be held inviolate . . . ." Thus, Ms. Simon acted appropriately in not revealing the initial consultation.

However, it soon became apparent that Ms. Simon was going to take over the representation of Mrs. Smith on the equitable distribution case. Although Mrs. Smith requested that Ms. Simon not tell RB&H that they were discharged until the last possible moment, the better practice, and probably the only ethical one, would have been to disclose the new representation by Ms. Simon to RB&H before RB&H continued unnecessary work on the case. Rule 0.1 of the Rules of Professional Conduct provides that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, *other lawyers* and public officials." (Emphasis added). Thus, RB&H should have been notified of their discharge when it was clear that Ms. Simon was taking over the representation of Mrs. Smith and the services of RB&H were no longer necessary.

Mr. Smith first assigns as error to the trial court's determination that the equitable distribution contingency fee contract between RB&H and Mrs. Smith is valid and enforceable. Mr. Smith claims the contract is void as against public policy. Additionally, Mr. Smith argues an enforceable contract was never formed because there was never a meeting of the minds on material terms of the contract.

North Carolina has approved the use of contingency fee contracts to compensate attorneys except when the fee contract is in direct violation of the public policy of this State. *Clerk of Superior Court of Guilford County v. Guilford Builders Supply Co., Inc.*, 87 N.C. App. 386, 388, 361 S.E.2d 115, 116 (1987), *disc. review denied*, 321 N.C. 471, 364 S.E.2d 918 (1988). Contingency fee contracts for representation in a divorce proceeding are prohibited. *Thompson v. Thompson*, 313 N.C. 313, 314, 328 S.E.2d 288, 290 (1985). In addition, contingency

fee contracts covering representation for alimony or child support subsequent to a divorce proceeding are void. *Davis v. Taylor*, 81 N.C. App. 42, 45, 344 S.E.2d 19, 21, *disc. review denied*, 318 N.C. 414, 349 S.E.2d 593 (1986). However, a separate contingency fee contract in an equitable distribution claim is fully enforceable. *Ronald Williams, P.A. v. Garrison*, 105 N.C. App. 79, 82, 411 S.E.2d 633, 634-35 (1992); *In re Foreclosure of Cooper*, 81 N.C. App. 27, 29, 344 S.E.2d 27, 29 (1986).

The public policy rationale advanced against contingency fee contracts in divorce, alimony, and child support actions do not apply to actions for equitable distribution. *In re Cooper*, 81 N.C. App. at 39, 344 S.E.2d at 35. The public policy against such contracts is "outweighed by the public policy of this State that litigants with insufficient means to protect their rights have reasonably experienced counsel available." *Id.* Furthermore, an additional protection is that all contingency fee contracts are subject to close scrutiny if there is any question regarding their fairness. *Id.*

[1] An attorney can have two contracts with his or her client, one for a fixed fee to secure a divorce and one for a percentage fee to prosecute the equitable distribution action. *In re Cooper*, 81 N.C. App. at 31, 344 S.E.2d at 35. In the instant case, RB&H had a contingency fee contract with Mrs. Smith for the equitable distribution claim, and had a separate hourly rate contract for the child custody, support, and final divorce actions. Thus, this financial arrangement between RB&H and Mrs. Smith in and of itself does not violate public policy.

[2] Defendant Mr. Smith claims the contingency fee contract is void as against public policy and therefore unenforceable because of the section in the contract on "FEES TO BE PAID IN THE EVENT OF DISCHARGE DUE TO RECONCILIATION." This section provides that in the event RB&H's services are terminated because Mrs. Smith reconciles with Mr. Smith, the firm will be paid 150% of their normal hourly charges plus expenses. It further provides that Mrs. Smith must make satisfactory financial arrangements to RB&H as a condition of any reconciliation.

North Carolina's public policy disfavors contracts that "encourage or bring about a destruction of the home." *Matthews v. Matthews*, 2 N.C. App. 143, 147, 162 S.E.2d 697, 699 (1968). Mr. Smith argues RB&H's higher fees in the event of a reconciliation and the conditioning of a reconciliation on RB&H's satisfaction as to the financial arrangements is void as against public policy. This Court has stated

that "when a portion of a contract is void as against public policy, the remainder of that contract may still be enforceable to the extent it is severable from, and not dependent in its enforcement upon, the void portion." *Davis*, 81 N.C. App. at 48, 344 S.E.2d at 23. The severable portion must not be the main purpose or essential feature of the agreement. *Id.*

In the instant case, the main purpose of the contract is to provide for competent counsel on a contingency fee basis in the equitable distribution case. The main purpose of the agreement is not to prevent a reconciliation between Mr. and Mrs. Smith or to penalize Mrs. Smith for reconciling with her husband. Even though the pertinent section of the contract seems to penalize Mrs. Smith in the event of reconciliation, we can strike that portion of the contract as void and enforce the remaining provisions. Since the contract is not dependent on the enforceability of that particular section, the entire contingency fee agreement is not voided merely because this section violates public policy. Thus, this assignment of error is overruled.

[3] In addition, Mr. Smith claims there was no meeting of the minds on the terms of the contract. He alleges that the agreement does not define value, which is the basis for any recovery of a contingency fee. A valid contract can only exist when the parties " 'assent to the same thing in the same sense, and their minds meet as to all terms.' " *Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (citation omitted). RB&H's engagement letter provided that the contingency fee would be based on "the value of the recovery." There is no indication that the agreed fee was unreasonable in amount or that the contract was not made with full knowledge by the client of all circumstances relating to the amount of the fee to be charged. In fact, the contract provides sliding scale percentages for RB&H's fees based on the "value" of Mrs. Smith's recovery from a settlement or court order following trial. It is common knowledge that the legal profession, jurors, and the courts decide the value of many items including the value of recovery or judgments on a daily basis. This is particularly true in the areas of class actions and structured settlements to name just a few instances. The term "value of the recovery" is a sufficient definition for the parties to have had a meeting of the minds. Thus, this assignment of error is overruled.

[4] Furthermore, Mr. Smith claims another section of the contract makes the entire contract void as against public policy because it discourages settlement. "[C]ontingency fee contracts providing against compromise or settlement of a case without the attorney's consent

often have been declared as void against public policy for inhibiting compromise or settlement." *Olive v. Williams*, 42 N.C. App. 380, 389, 257 S.E.2d 90, 96-97 (1979). In the instant case, the pertinent provision in the contract provides that Mrs. Smith has "agreed to refrain from any communication with [her] husband regarding [her] equitable distribution claim." This provision against communication between Mr. and Mrs. Smith is invalid. The comment to Rule 4.2 of the North Carolina Rules of Professional Conduct provides that parties to a matter may communicate directly with each other.

Despite the invalidity of this section of the contract, the remainder of the contingency fee contract is still enforceable because it is also severable from, and not dependent in its enforcement upon, the void portion. *See Davis*, 81 N.C. App. at 48, 344 S.E.2d at 23. The severable portion is not the main purpose or essential feature of the agreement. *Id.* The main purpose of this contract is to provide Mrs. Smith with sufficient means to protect her rights, with the assistance of experienced counsel in her equitable distribution claim. *See In re Cooper*, 81 N.C. App. at 39, 344 S.E.2d at 35. The main purpose of the agreement is not to prevent Mrs. Smith from settling her case or from reconciling with her husband. Viewing the record on appeal including the evidence of the hostility between the parties, we conclude that the void portion regarding no communication between the parties was an attempt to protect Mrs. Smith's rights in getting a fair portion of the marital estate. Since the main purpose of the contract is not void against public policy and the void provision is severable, this assignment of error is overruled.

Next, Mr. Smith claims the trial court erred in concluding that RB&H was entitled to summary judgment for the contingency fee contract. Appellate review of the grant of summary judgment is limited to two questions, including: (1) whether there is a genuine question of material fact, and (2) whether the moving party is entitled to judgment as a matter of law. *Gregorino v. Charlotte-Mecklenburg Hosp. Authority*, 121 N.C. App. 593, 595, 468 S.E.2d 432, 433 (1996). A motion for summary judgment should be granted if, and only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). Evidence is viewed in the light most favorable to the nonmoving party with all reasonable inferences drawn in favor of the nonmovant. *Whitley v. Cubberly*, 24 N.C. App. 204, 206-07, 210 S.E.2d 289, 291 (1974).

**[5]** Mr. Smith claims that since the contract is void as against public policy, RB&H is not entitled to receive any fee for services rendered for the equitable distribution claim. At most, Mr. Smith argues RB&H is entitled to a recovery in *quantum meruit*. A general rule is that "an attorney employed pursuant to a contingency fee contract who is *discharged* before completion of the matter for which he was employed can recover only the reasonable value of his services as of the date of discharge, regardless of whether the discharge is with or without cause." *Guilford Builders*, 87 N.C. App. at 389, 361 S.E.2d at 117 (emphasis added). The policy behind this rule is to allow the client to terminate the attorney-client relationship at will. *Id.*

Mr. Smith claims there is no contingency fee to collect since there is no underlying judgment because Mr. and Mrs. Smith settled and the Mecklenburg County order was vacated. In the absence of an express contract, a plaintiff may recover in *quantum meruit* on an implied contract theory for the reasonable value of services and materials rendered to and accepted by a defendant. *Ellis Jones, Inc. v. Western Waterproofing Co., Inc.*, 66 N.C. App. 641, 647, 312 S.E.2d 215, 218 (1984). In the instant case, the trial court found that the express contract between RB&H and Mrs. Smith was valid.

There can be no recovery for breach of an implied contract when an express contract covers the same subject matter. *Catoe v. Helms Construction & Concrete Co.*, 91 N.C. App. 492, 497, 372 S.E.2d 331, 335 (1988). Since there is an express contract and the condition of obtaining a recovery for Mrs. Smith was met, *quantum meruit* based on an implied contract theory is an inappropriate remedy for RB&H.

Even if *quantum meruit* was the appropriate remedy, "a client's discharge of his attorney 'on the courthouse steps' after completion of all but a minor part of the work required might justify a finding that the reasonable value of the attorney's services was equal to the entire fee to which he would have been entitled under the contract." *Guilford Builders*, 87 N.C. App. at 389, 361 S.E.2d at 117.

However, the outcome is different if the attorney is not actually discharged. *Id.* at 390, 361 S.E.2d at 117. "If [the attorney] was not so discharged, then the attorney-client relationship continued to exist . . . ." *Id.* In the instant case, Mrs. Smith did not actually discharge RB&H until after the settlement had finalized. RB&H continued to produce work for Mrs. Smith, even though Ms. Simon was working out a settlement for Mrs. Smith without RB&H's knowledge. The record reflects that Mrs. Smith's voluntary dismissal of the

Mecklenburg County case and the filing of the Iredell County case were both done before the discharge letter to RB&H was mailed or received. In addition, Mrs. Smith obtained information from RB&H which was used by Ms. Simon in the settlement discussions.

Viewing the pertinent provision in the contract between RB&H and Mrs. Smith to determine the appropriate amount of recovery for attorneys' fees based on a sliding scale, RB&H "agreed to handle this case for [Mrs. Smith] on a contingency fee basis wherein [RB&H's] fee will be based on and determined by the value of the recovery obtained for [Mrs. Smith] by *settlement or by court order* following trial." (Emphasis added). Since a settlement was obtained by the two parties before RB&H was discharged, "the contingency would have occurred during the existence of the attorney-client relationship and [the attorney's] equitable rights under the contingent fee contract would attach." *Guilford Builders*, 87 N.C. App. at 390, 361 S.E.2d at 117. Thus, RB&H is entitled to base its recovery under the contingency fee contract upon settlement. RB&H assigns as error the issue of whether the trial court erred in calculating the measure of damages on RB&H's breach of contract claim for the contingency fee contract against Mrs. Smith. RB&H claims the Mecklenburg County District Court failed to base RB&H's recovery on the $15.5 million judgment they obtained. In the alternative, RB&H argues the trial court failed to include in the value of Mrs. Smith's Iredell County settlement the value of payments made by Mr. Smith on her behalf to attorneys and accountants as required by the Iredell County order. In the instant case, the trial court found the contingency fee contract was valid and enforceable as written. Thereafter, the trial judge entered judgment against Mr. and Mrs. Smith jointly and severally in the amount of $1,553,157.00 plus interest on the contingency fee contract between Mrs. Smith and RB&H.

We note that RB&H contends their contingency fee should be based on the value of the judgment they recovered and not on the final settlement. A review of the entire record does not disclose how the trial judge determined the appropriate amount of attorneys' fees awarded to RB&H for the contingency fee contract. Therefore, this issue is remanded for entry of an order with findings of fact and a determination of the appropriate amount of attorneys' fees for RB&H based on the contingency fee contract and the value of the judgment in effect at the time of the termination.

[6] Mr. Smith argues RB&H breached the fiduciary duty it owed to Mrs. Smith during litigation because RB&H placed its interest in fees

before the client's interest. This assertion is without merit "given the obligation of attorneys to represent their clients with zeal, [because] if the objective of litigation is to obtain the maximum award possible, then contingent-fee contracts ensure that attorneys and their clients have the same overall interest and objective." *In re Cooper*, 81 N.C. App. at 37, 344 S.E.2d at 33. RB&H had an incentive to achieve the highest judgment they could for Mrs. Smith because the more money the client obtained, the more RB&H would receive on its own behalf. Mrs. Smith's interests would not be overlooked, because a higher attorney fee for RB&H means Mrs. Smith would receive more money as well. Thus, this assignment of error is overruled.

**[7]** RB&H assigns as error to the trial court's granting of Mr. Smith's motion for summary judgment on RB&H's tortious interference with contract claim. Summary judgment is only appropriate where the parties' pleadings and discovery materials establish there is no genuine issue of material fact. *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 304, 382 S.E.2d 836, 838, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989). The elements of tortious interference with contract include: (1) a valid contract between plaintiff and a third person which confers upon plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988), *aff'd*, 335 N.C. 183, 437 S.E.2d 374 (1993). Plaintiff may recover actual damages flowing from the tortious conduct. *Kuykendall*, 335 N.C. at 191, 437 S.E.2d at 379. In addition, plaintiff may recover punitive damages " 'only where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of plaintiff's rights.' " *Id.* (quoting *Hardy v. Toler*, 288 N.C. 303, 306-07, 218 S.E.2d 342, 346 (1975)). However, plaintiff generally cannot recover attorneys' fees. *Id.*

North Carolina law provides that "a third party who induces one party to terminate or fail to renew a contract with another may be held liable for malicious interference with the party's contractual rights if the third party acts without justification." *Fitzgerald v. Wolf*, 40 N.C. App. 197, 199, 252 S.E.2d 523, 524 (1979). The justification for an actor's conduct depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of

the actor[,] and the contractual interests of the other party." *Peoples Security Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650, *reh'g denied*, 322 N.C. 486, 370 S.E.2d 227 (1988). "A person is justified in inducing the termination of a contract of a third party if he does so for a reason reasonably related to a legitimate business interest." *Fitzgerald*, 40 N.C. App. at 200, 252 S.E.2d at 524. Giving plaintiff as nonmovant all favorable inferences that may reasonably be drawn from the evidence, defendant had no legitimate business interests in this contract.

Mr. Smith claims he is an insider to the contract. This assertion is incorrect because the contract was between RB&H and Mrs. Smith. In fact, Mr. Smith was the opposing party in the case by Mrs. Smith. Regardless of this claim, one who is not an outsider to a contract may still be liable for interfering with the contract if he acted maliciously. *Varner v. Bryan*, 113 N.C. App. 697, 701-02, 440 S.E.2d 295, 298 (1994). However, it is not enough to merely show that a defendant acted with actual malice. *Id.* Plaintiff must provide evidence that defendant acted with legal malice. *Id.* at 702, 440 S.E.2d at 298. "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (citing *Murphy v. McIntyre*, 69 N.C. App. 323, 328-29, 317 S.E.2d 397, 401 (1984)). If an outsider to the contract has sufficient lawful reason for inducing the breach of contract, he is exempt from any liability, no matter how malicious in actuality his conduct may be. *Id.*

" '[B]ad motive is the gist of the [tortious interference] action.' " *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 439, 293 S.E.2d 901, 916, *disc. review denied and appeal dismissed*, 307 N.C. 127, 297 S.E.2d 399 (1982) (citation omitted). Summary judgment is generally inappropriate when issues such as motive, intent, and other subjective feelings and reactions are material. *Gregorino*, 121 N.C. App. at 595, 468 S.E.2d at 433. In the instant case, Mr. Smith's intent and motive are essential elements of the tortious interference with contract claim. Thus, the entry of summary judgment in Mr. Smith's favor was erroneous.

[8] RB&H also assigns as error the grant of summary judgment in favor of Mr. Smith on the claim for tortious interference with prospective economic advantage. The North Carolina Supreme Court has held that claims for tortious interference with prospective economic advantage still prevail, stating that "unlawful interference with

ROBINSON, BRADSHAW & HINSON v. SMITH

· [129 N.C. App. 305 (1998)]

the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of defendant's own right, but with design to injure the plaintiff, or gaining some advantage at his expense." *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc.*, 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992). As we have already mentioned, summary judgment is inappropriate when issues such as motive or intent are material. *Gregorino*, 121 N.C. App. at 595, 468 S.E.2d at 433. Since motive and intent (states of mind) are involved, this issue is also appropriate for the fact-finder. Thus, this assignment of error is also sustained. Summary judgment for Mr. Smith on this claim was error.

We note that Mrs. Smith has failed to bring forward any assignments of error. Appellate review normally depends on specific exceptions and proper assignments of error presented in the record on appeal. *Wade v. Wade*, 72 N.C. App. 372, 375, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). The reason for requiring an appellant to assign or designate the exceptions on which he will rely is apparent. Appellee is entitled to know on which of the exceptions taken appellant intends to rely, so that there may be included in the record such information as may be necessary to determine the proper disposition of the appeal. *Conrad v. Conrad*, 252 N.C. 412, 416, 113 S.E.2d 912, 914 (1960).

The appellate rules require an assignment of error to state clearly what question is intended to be presented without the necessity of the court going beyond the assignment of error through the record to find the asserted error and the precise question involved. *Kleinfeldt v. Shoney's of Charlotte, Inc.*, 257 N.C. 791, 793, 127 S.E.2d 573, 574 (1962). Where the record contains no assignments of error, this is grounds for dismissal for failure to comply with the appellate rules. *Williams v. Denning*, 260 N.C. 540, 542, 133 S.E.2d 148, 149 (1963).

[9] However, the appellate rules do not require a party against whom summary judgment has been entered to place exceptions and assignments of error into the record on appeal. *Ellis v. Williams*, 319 N.C. 413, 416, 355 S.E.2d 479, 481 (1987). On appeal, without exceptions and assignments of error, the notice of appeal to a summary judgment is necessarily limited to whether the trial court's conclusions were correct ones. *Id.* Thus, notice of appeal adequately notifies the opposing party and the appellate court of the limited issues to be reviewed. *Id.*

Mrs. Smith's issue number three questions the failure of the trial court to determine Mr. Smith's liability by judgment and contract to pay any attorneys' fees obligation Mrs. Smith may have to RB&H. Mrs. Smith claims there is no genuine issue of material fact and, thus, summary judgment on this issue is appropriate for her. The Iredell County judgment and settlement contract obligated Mr. Smith to pay RB&H all attorneys' fees Mrs. Smith is determined to owe to RB&H. However, Mr. Smith argues that he is not obligated to pay the attorneys' fees because Mrs. Smith breached the provision in the settlement agreement requiring her to cooperate in the defense of RB&H's action for fees. Mr. Smith points to the order allowing him to amend his answer to Mrs. Smith's cross-claim against him for indemnity for any fees she may be held to owe RB&H. The order allowing Mr. Smith to amend was entered the same day as the summary judgment against Mr. Smith. Mrs. Smith counters that Mr. Smith is not allowed to rely on his unverified pleading to defeat summary judgment on RB&H's third-party claim against him.

Since Mr. Smith's pleading was amended the same day as the summary judgment hearing, and because the trial court's summary judgment does not specifically address the issue, we are unable to determine from the record before us whether the trial court considered the issue of Mr. Smith's liability for Mrs. Smith's attorneys' fees. In fact, the summary judgment is silent with regard to the same. From the sparse record before us, there appears to be a genuine issue of material fact as to whether Mrs. Smith breached the settlement contract. However, we do not believe this issue was ripe or proper for consideration at the time the court ruled.

Mrs. Smith's remaining two issues were determined and discussed in the portion of this opinion addressing Mr. Smith's assignments of error. Thus we do not address them further.

We have reviewed the remaining assignments of error and find them to be without merit. For the foregoing reasons, the decision of the trial court is affirmed on the issue of the validity of the contingency fee contract, reversed on the grants of summary judgment in favor of Mr. Smith for the tortious interference with contract claim and the tortious interference with economic advantage claim, and remanded for a determination with findings of fact of the appropriate amount of RB&H's attorneys' fees based on the contingency fee agreement and the value of the judgment in effect at the time of the termination of RB&H as counsel. On remand the trial court shall also

determine Mr. Smith's obligation, if any, for payment of Mrs. Smith's attorneys' fees and expenses to RB&H.

Affirmed in part, reversed in part, and remanded.

Chief Judge ARNOLD and Judge MARTIN, John C., concur.