The Full Commission has reviewed this matter based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and arguments on appeal. Based on his assignments of error, Mr. McCrann has shown good ground to receive further evidence or to amend the holding of the prior Opinion and Award. However, plaintiff has not shown good ground to reconsider the evidence. Having reconsidered the evidence of record and based upon its authority under G.S. § 97-85, the Full Commission modifies the prior Opinion and Award concerning the payment of attorney's fees and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties in a Pre-Trial Agreement and at the hearing on 29 October 1997 as:
 STIPULATIONS
1. The parties were subject to the North Carolina Workers' Compensation Act at all relevant times herein.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Zurich-American Insurance Group was the carrier on the risk at all relevant times herein.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 7 June 1993.
5. Plaintiff was paid temporary total disability benefits for a total of 50 and 6/7 weeks between 8 June 1993 and 5 August 1995 at the compensation rate of $324.59 based on an average weekly wage of $486.89.
***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff suffered a compensable injury by accident to his right thumb while employed with Weber U.S.A. on 7 June 1993. The injury resulted in partial loss of the digital aspect of the right thumb and required multiple surgeries to repair.
2. By 22 December 1994, plaintiff's condition had stabilized to the point where a permanent impairment rating of 75% had been given. In a letter written by the Zurich-American Insurance Group on that date, plaintiff was offered the possibility of settling the permanent partial disability portion of his claim whereby he would receive payment for a 100% loss of his thumb.
3. Thereafter, plaintiff sought out the advice of Attorney Michael J. McCrann, and entered into a contingency fee contract with Attorney McCrann on 10 January 1995. Plaintiff testified that Attorney McCrann advised him that it was possible that he might eventually settle the claim for more than defendants' offer depending on the outcome of future surgery and plaintiff's ability to return to work. Based on that information, plaintiff decided to refuse defendant-employer's offer and continue medical treatment.
4. Plaintiff underwent an additional surgery and again received a 75% permanent partial disability rating. Plaintiff was released to return to work with Weber U.S.A. at equal or greater wages. At the time of the hearing before the Deputy Commissioner, plaintiff continued to remain employed with Weber U.S.A.
5. After plaintiff's release, Zurich-American Insurance Group contacted Attorney McCrann and offered to settle the permanent partial disability rating on an Industrial Commission Form 26 for 100% loss to the right thumb. On or about 16 November 1995, Zurich-American Insurance Group forwarded an Industrial Commission Form 26, Supplemental Agreement for Compensation for Disability, to this effect and included a check for $24,344.25 made payable jointly to plaintiff and Attorney McCrann. On 27 November 1995, plaintiff executed the Industrial Commission Form 26 in Attorney McCrann's office. At this time, plaintiff requested a copy of the check and was given the endorsed original by mistake.
6. Plaintiff testified that Attorney McCrann must have realized the mistake and called plaintiff's residence where he allegedly spoke inappropriately to plaintiff's fourteen (14) year old daughter. Plaintiff further testified that a dispute had arisen between him and Attorney McCrann because Attorney McCrann had failed to secure the fifty to sixty thousand dollar settlement that he felt he had been promised. Therefore, plaintiff refused to return the check to Attorney McCrann. The next day, Attorney McCrann wrote to Zurich-American Insurance Group to request that a stop payment be issued on the endorsed check and that they return the executed Industrial Commission Form 26. Zurich-American Insurance Group stopped payment on the check.
7. It was not until after this dispute that plaintiff wrote to the State Bar and the Industrial Commission on or about 22 December 1995 complaining that Attorney McCrann was incompetent and had done a poor job of representing him. Plaintiff thereafter wrote a 9 February 1996 letter to the North Carolina Bar Association indicating that he had made "three or four attempts to contact Mr. McCrann about writing a letter stating that I have released him as my Attorney in any matters. . . ." The letter further requests that Attorney McCrann notify the Industrial Commission and Zurich-American Insurance Group that he no longer was representing plaintiff. This letter was copied to the Industrial Commission, Attorney McCrann and Zurich-American Insurance Group and mentions in a postscript that plaintiff understood (per the Industrial Commission) that the Industrial Commission Form 26 had been approved. However, the Form 26 had not been approved at this time.
8. Attorney McCrann wrote a letter to the North Carolina Bar Association and the Industrial Commission on 27 February 1996 responding to the complaints made against him by plaintiff. Attorney McCrann did not file a motion to withdraw from the case.
9. Because of the uncertainty existing with the representation of plaintiff in the case on 11 March 1996, Zurich-American Insurance Group wrote to the Industrial Commission and requested direction on how to disburse the funds from the Industrial Commission Form 26.
10. On 25 March 1996 after the dispute arose over the check and the amount of plaintiff's settlement, plaintiff wrote a letter directly to Attorney McCrann informing him without reservation that plaintiff was releasing him from representation. In that letter, plaintiff requested that Attorney McCrann mail him a copy of his file, inform the Industrial Commission, the Zurich-American Insurance Group and the North Carolina Bar Association that he no longer represented plaintiff and asked him to submit a bill for the value of services rendered.
11. A few days later, on 28 March 1996, Zurich-American Insurance Group made an advance against the amounts due under the Industrial Commission Form 26 by paying $5,000.00 to plaintiff at his request. This payment did not jeopardize Attorney McCrann's fee. In fact Zurich-American Insurance Group could have paid plaintiff all monies due but not in controversy.
12. Attorney McCrann responded to plaintiff's 25 March 1996 letter on 1 April 1996 by stating: "I am not prepared to agree to release you from our fee contract dated 10 January 1995." Nevertheless, Attorney McCrann did not file a Motion withdrawing from representation in this case. Copies of that letter were sent to Zurich-American Insurance Group and the Industrial Commission. Therefore, Zurich-American Insurance Group was put on notice that Attorney McCrann intended to collect his full contingency fee if approved by the Commission.
13. Thereafter, plaintiff repeatedly informed Zurich-American Insurance Group that he was no longer represented and insisted that he did not want the attorney's name to appear on the remaining checks. Zurich-American Insurance Group encouraged plaintiff to release his attorney from representation stating that it would be the only way to prevent the attorney's name from appearing on the check. On 29 May 1996, prior to approval of the Form 26 and without an order from the Commission resolving the issue of the attorney's fee or showing that Attorney McCrann was no longer counsel of record, Zurich-American Insurance Group issued a check payable to plaintiff in the amount of $19,344.25 for the remaining permanent partial disability due under the executed but unapproved Industrial Commission Form 26 and forwarded it to plaintiff. Had the check been written jointly to plaintiff and his attorney much confusion could have been avoided.
14. On 20 September 1996 after payment by Zurich-American Insurance Company, the Commission approved the Form 26 for payment of permanent partial disability benefits and simultaneously approved an attorney's fee for Attorney McCrann in the amount of $6,086.06 which was to be deducted from compensation due plaintiff. However, since all compensation had been paid to plaintiff prior to approval of the Form 26 Attorney McCrann did not receive his portion of the Form 26 Award from the defendant-carrier.
15. Therefore, Attorney McCrann requested that Zurich-American Insurance Group pay his attorney's fees pursuant to the approved Form 26. The company responded that no further compensation was due plaintiff as all amounts owing under the Industrial Commission Form 26 had already be disbursed and declined to pay any of the attorney's fees approved by the Industrial Commission.
16. In response to a letter written by Attorney McCrann, Executive Secretary Tracey H. Weaver advised Attorney McCrann to confer with his client to discuss the payment of a reasonable fee from the compensation received by his client from Zurich-American Insurance Group. However, there has been no resolution.
17. Plaintiff received all compensation due him under the North Carolina Workers' Compensation Act. In addition a part of the money received by plaintiff was actually in dispute since a portion of it became due to Attorney McCrann when the Form 26 was approved.
18. There is no evidence in the record to suggest that defendants unreasonably defended counsel for plaintiff's request for hearing.
19. There is no evidence in the record to suggest defendants payment of compensation was not timely paid. However, had defendant-carrier held the disputed attorney's fees in trust, or awaited an order for attorney's fees from the Commission, or even made the final check payable jointly to plaintiff and Attorney McCrann, this matter could have been resolved in a less complicated fashion.
20. Attorney McCrann requests an attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff through the approved Industrial Commission Form 26. Counsel for plaintiff has submitted a fee agreement, signed by plaintiff, in support of his request. Based upon the fact that the outcome of plaintiff's claim following surgery was uncertain, the amount and type of work performed in pursuit of plaintiff's claim and the nature of the services provided, counsel for plaintiff's fee agreement is reasonable. Although it may appear in retrospect that Attorney McCrann secured a settlement that was no better than the settlement previously offered plaintiff prior to his involvement, an attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is nevertheless found to be reasonable.
21. Although the record reflects numerous statements by the plaintiff to the effect that he has discharged Attorney McCrann as counsel, there has never been any Motion to Withdraw filed with the Industrial Commission. The undersigned emphasize that Attorney McCrann may have an obligation to withdraw when requested to do so by his client and that had he done so in the instant case much of the resulting confusion may have been alleviated.
22. At present, there is insufficient evidence in the record upon which to base an award of attorney's fees to Attorney Nicholle T. Phair, plaintiff's current counsel.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has received all compensation due to him under the North Carolina Workers' Compensation Act and an overpayment consisting of the attorney's fees owed to Attorney McCrann pursuant to the Industrial Commission Form 26. Payments were timely made to plaintiff by defendants. G.S. § 97-18.
2. Because defendants were reasonable in their defense of this matter and did not defend this case based upon unfounded litigiousness, plaintiff is not entitled to the award of an attorney's fee under G.S. § 97-88.1.
3. If a client discharges his attorney "on the courthouse steps" and after completion of the work, the reasonable value of the attorney's services may include his entire fee under the contract. Robinson, Bradshaw and Hinson v. Smith,129 N.C. App. 305, 498 S.E.2d 841 at 849 (1998).
4. Attorney McCrann is entitled to receive attorney's fees in the amount of $6,086.06 pursuant to the contingency fee contract and as the reasonable value of services rendered by him to plaintiff in relation to his workers' compensation claim. G.S. §97-90.
5. Defendants are responsible for payment of attorney's fees in the amount of $6,086.06 to Attorney McCrann as they were aware that Attorney McCrann intended to hold plaintiff to the fee contract and they were ordered to make payment pursuant to the approved Form 26. This fee shall be paid directly by defendants to Attorney McCrann. Defendants would be entitled to a credit in the amount of $6,086.06 against any future payments made to plaintiff as a result of a change of condition. However, since the statute for change of condition has run, there will be no more future compensation benefits due plaintiff other than possibly treatment for related medical expenses. As a result the credit must be treated as an overpayment to plaintiff. Since the amount of overpayment is final in nature, defendants may pursue additional avenues in the general court of justice. G.S. §§97-90, 97-42 and 97-47.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies in part and affirms in part the Deputy Commissioner's holding and enters the following:
 ORDER
1. Defendants shall pay Attorney McCrann an attorney's fee in the amount of $6,086.00 for services rendered to plaintiff in this matter pursuant to the approved Form 26.
2. Attorney Nicolle T. Phair, plaintiff's current counsel, shall submit a fee request to the Full Commission which is either agreed to by plaintiff or copied to him.
3. Each party shall bear its own costs.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER