MED1 NC Servs., LLC v. MED1 Plus, LLC, 2021 NCBC 38.

STATE OF NORTH CAROLINA

ROBESON COUNTY

MED1 NC SERVICES, LLC,

               Plaintiff,

v.

MED1 PLUS, LLC; GREGORY
STANTON BRYANT;
COMMONCAPITAL, LLC;
DANIEL MORMAN;
DONNA S. GRUENEMEIER; AND
ANGELA WHITE,

               Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 1983

**ORDER AND OPINION ON MOTION
FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE**

THIS MATTER comes before the Court upon the remaining Defendants Med1 Plus, LLC ("Med1 Plus"), Gregory Stanton Bryant ("Bryant"), Donna S. Gruenemeier ("Gruenemeier"), and Angela White's ("White") (collectively, "Defendants") Motion for Summary Judgment, ("Motion," ECF No. 52) and Defendants' Objection and Motion to Strike Portions of Affidavit of Richard Hicks. ("Motion to Strike," ECF No. 57; collectively the Motion and the Motion to Strike are the "Motions".)

In support of the Motion, Defendants filed evidentiary exhibits (ECF Nos. 53.1–53.14) and an Amended Memorandum in Support of Motion for Summary Judgment ("Mem. in Support MSJ," ECF No. 62).[1] Plaintiff filed evidentiary exhibits in opposition to the Motion (ECF Nos. 56.1–56.24) and an Amended Memorandum in

---

[1] Defendants also filed a "corrected" Amended Memorandum. (ECF No. 63.) It appears to the Court that the memoranda are identical, and the Court refers to ECF No. 62 as Defendants' brief.

Opposition to Defendants' Motion for Summary Judgment ("Mem. in Opp. MSJ," ECF No. 61). Defendants did not file a reply.

Plaintiff also filed a Memorandum of Law in Opposition to the Motion to Strike. (ECF No. 58.)

The Court held a hearing on the Motions at which counsel for the parties presented argument. The Motions are now ripe for disposition.

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing, the applicable law, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below and the Motion to Strike should be DENIED.

> *Teague Campbell Dennis & Gorham, LLP, by Matthew J. Little and Damie A. Sesay for Plaintiff Med1 NC Services, LLC.*
>
> *The Charleston Group, by Jose A. Coker and Johnathan R. Charleston for Defendants Med1 Plus, LLC, Gregory Stanton Bryant, Common Capital, LLC, Daniel Morman, Donna S. Gruenemeier, and Angela White.*

McGuire, Judge.

## I.   FACTS AND PROCEDURAL BACKGROUND

1.     Many significant material facts in this case are disputed. The Court will attempt to summarize the undisputed facts and describe the disputed ones.

*A. The parties*

2.     Robeson County, North Carolina solicits proposals from qualified providers for the exclusive contractual right to provide non-emergency ambulance

services and non-ambulatory transportation services to residents within the county. (Gruenemeier Dep. II, ECF No. 53.6, at pp. 41, 44.)  Non-emergency ambulance services essentially involve transporting county residents between their homes and various medical care facilities including hospitals, nursing homes, physician's offices, etc. (ECF No. 53.6, at p. 35.) Residents call the service provider to schedule appointments for transportation. (White Dep., ECF No. 53.12, at pp. 40–41 and 51.) The Robeson County Board of Commissioners ("Board of Commissioners") decides to which provider the contract (the "Robeson County Contract") will be awarded in their sole discretion.  (ECF No. 53.6, at p. 44.)

3. Med1 NC Services, L.L.C. ("Plaintiff") is a Georgia limited liability company with its principal place of business in Lumberton, NC.  HR1 Services, Inc., is the sole manager/member of Plaintiff, and Richard Hicks ("Hicks") is majority owner and principal of HR1 Services, Inc.  From July 9, 2012 to June 30, 2019, Plaintiff was a party to the Robeson County Contract and was the exclusive provider of non-emergency ambulance services in Robeson County.

4. From approximately 2012 to 2019, Defendant Bryant worked as a consultant for Plaintiff.  Bryant had previously owned and operated a non-emergency ambulance services company and had worked as a consultant for another non-emergency ambulance services company. (Bryant Dep. I, ECF No. 56.4, at pp. 9 and 15–16.)  As a consultant for Plaintiff, Bryant was responsible for maintaining relationships with Robeson County officials, hospitals, and other medical care providers, and for investigating and resolving complaints against Plaintiff.  (Hicks

Dep., ECF No. 53.13, pp. 34–35; ECF No. 56.4 at p. 15.)  Plaintiff did not have a written contract with Bryant.  (*Id*. at p. 34.)

5.      Plaintiff employed White as a dispatcher from 2012 until June 24, 2019. As dispatcher, White had access to information including health and medical information of the Robeson County residents to whom Plaintiff provided services. (ECF No. 56.2, at p. 40; 56.3, Skimmiehorn Dep., at pp. 30 and 32.)  White also had access to dispatch logs and utilization numbers.  (*Id*. at 32–33.)  Plaintiff contends that this information is its confidential and proprietary information.

6.      Gruenemeier owned the company that provided non-emergency ambulance services for Robeson County from 1991 to 1998 and was Director of the company that had the Robeson County Contract from 1998 until 2011. (ECF No. 53.6, pp. 22–24; ECF No. 53.2, at p. 17.)  Plaintiff employed Gruenemeier as its Director for approximately six months in or around 2012.  From approximately 2012 to 2019, Gruenemeier operated a business providing consulting services to non-emergency ambulance services.  (ECF No. 53.2, at pp. 14–16.)

*B. Hicks and Bryant negotiate over sale of Plaintiff to Bryant*

7.      Hicks claims that in late January or February 2019, he learned through Plaintiff's employees that Bryant planned to take over Plaintiff's business.  (ECF No. 53.13, at pp. 34–35.)  Hicks contacted Bryant and contends that Bryant told Hicks that he was going to "take [Hicks'] business."  (*Id*. at p. 37.)  Defendants do not deny Bryant's statement.   However, Bryant testified that on January 25, 2019 he

approached Hicks and told him that "after [the Robeson County Contract] had expired I wouldn't be part of" Plaintiff. (Bryant Dep. II, ECF No. 53.14, at p. 12.)

8. As a result of his conversation with Bryant, Hicks decided to offer to sell Plaintiff to Bryant, and starting in February 2019, Hicks and Bryant engaged in negotiations over Bryant's potential purchase of Plaintiff. (ECF No. 53.13, at pp. 38–42; ECF No. 53.14, at pp. 24–31; Text Messages, ECF No. 56.9.) Both parties were represented by attorneys in the negotiations. In addition, Bryant engaged Gruenemeier to advise him during the negotiations. (ECF No. 56.4, at p. 15.)

9. Plaintiff contends that as part of the negotiations, Plaintiff and Bryant entered into a written confidentiality agreement and Plaintiff has produced an agreement purportedly bearing Bryant's signature (ECF No. 53.13, at p. 39; "Confidentiality Agreement," ECF No. 56.6), as well as text messages between Hicks and Bryant regarding the agreement. (Text Messages, ECF No. 56.7.) However, while Bryant admits he received a draft of the Confidentiality Agreement, he claims he did not sign it. (ECF No. 56.4, at pp. 28–29 and 107–08.)

10. The Confidentiality Agreement states that it is being entered to facilitate Plaintiff in providing Bryant with "confidential, important, and/or proprietary trade secret information concerning" Plaintiff. (ECF No. 56.6, at p. 1.) The Confidentiality Agreement prohibited Bryant from disclosing or using the confidential information provided by Plaintiff other than in connection with the negotiation for the purchase of Plaintiff and expressly provided that Bryant "shall

not in any way use the Confidential Information to the detriment of [Plaintiff]." (ECF No. 56.6, at pp. 1–2.)

11. It is undisputed that during the negotiations, Hicks provided Bryant with some information about Plaintiff's finances and operations. Hicks claims that the information included Plaintiff's profit and loss ("P&L") statements, information about Plaintiff's insurance policies, including Plaintiff's cost for workers' compensation insurance; records regarding Plaintiff's employees including Plaintiff's costs associated with its employees; a list of Plaintiff's vehicles and maintenance records for those vehicles. (ECF No. 53.13, at pp. 39 and 42.) Bryant denies that Hicks provided him with any information other than Plaintiff's P&L statements. (ECF No. 53.14, at pp. 25–26 and 39–40.) Bryant claims that Hicks never identified any information he provided to Bryant as proprietary or confidential, and that Hicks did not ask him to keep any information confidential. (*Id.*)

*C. The 2019 Robeson County Contract*

12. The negotiations over the sale of Plaintiff to Bryant proved unsuccessful, and the parties were not able to reach a final agreement. As a result, Bryant decided to form his own business to make a proposal for the Robeson County Contract. (ECF No. 53.14, at p. 31.) In May 2019, Bryant formed Defendant Med1 Plus, LLC ("Med1 Plus"). (*Id.*) Bryant and former Defendant Daniel Morman ("Morman") are each 50% owners of Med1 Plus. (ECF No. 56.4, at pp. 9–10.)

13. In late May or June 2019, Robeson County put the Robeson County Contract out for proposals. On June 5, 2019, Plaintiff submitted its proposal to the

Board of Commissioners. (ECF No. 56.3, at pp. 17–18; "Plaintiff's Proposal," ECF No. 56.13.)

14. On June 5, 2019, Med1 Plus also submitted a proposal to the Board of Commissioners. (ECF No. 56.4, at pp. 66–67; "Med1 Plus Proposal," ECF No. 56.10.) Gruenemeier prepared the Med1 Plus Proposal. (ECF No. 53.2, at p. 32.) It is undisputed that Plaintiff and Med1 Plus were the only providers that submitted proposals for the Robeson County Contract.

15. Hicks is convinced that Bryant and Gruenemeier used confidential information Bryant obtained from Plaintiff during the negotiations over the potential sale of Plaintiff in preparing Med1 Plus's Proposal. (ECF No. 53.13, at pp. 67–73 and 85–86.) Hicks points to the fact that Med1 Plus's Proposal listed several of Plaintiff's employees, including White, as persons who would be employed by Med1 Plus. (*Id.* at p. 73.) Hicks also claims that Bryant must have used Plaintiff's information to obtain financing for a loan to start Med1 Plus, but admits he has no evidence to support this claim other than his speculation. (*Id.* at pp. 68–70.) Hicks also implies that Bryant must have had access to Plaintiff's proposal because the monthly franchise fee Med1 Plus agreed to pay to Robeson County for the rights to provide its services was only slightly higher than the monthly fee contained in Plaintiff's proposal.[2] (*Id.* at pp. 75–77.) However, Plaintiff fails to explain how this implicates any confidential information Plaintiff provided Bryant during the negotiations.

---

[2] The Court understands Hicks' implication to be that because of his close relationships with Robeson County officials, Bryant must have been given access to Plaintiff's proposal to unfairly assist him in obtaining the Robeson County Contract.

16.    Bryant denies that Med1 Plus used any of Plaintiff's financial information in preparing its bid.  (ECF No. 53.14, at pp. 38 and 43.)  In fact, Med1 Plus's Proposal does not contain any financial proposals or terms.  (ECF No. 56.10.)

17.    On June 17, 2019, the Board of Commissioners held a public meeting during which they considered the proposals for the Robeson County Contract.  For the meeting, the Board of Commissioners were provided with a single-page summary of the two proposals titled "Non-emergency Contract Highlights and Comparison." ("Comparison," ECF No. 56.14.)  The Comparison provided as follows:

CURRENT SERVICE PROVIDER
MED 1    Atlanta, GA    Requesting 5 Year Extension

PROS:
Proposed a payment to County of $22,178.90 quarterly
total $88,715.60 increase of $4,715.60
Active in the community
Assisted tremendously during both hurricanes
Partnership Robeson Community college
Very knowledgeable staff of non-emergency transport
Student scholarships annually

CONS:
Headquarters Atlanta Ga
1 Client (Robeson)
Has not invested any money in new ambulances over 7
Years
No detail of full-time employee benefits

NEW PROVIDER PROPOSAL
MED 1 PLUS    Lumberton, NC    Requesting 7-year
contract

PROS:
Local ownership/management
Leadership has many years of combined experience in non-emergency transport
Will employ current provider staff

> Will use local community college for training
> Will offer full-time employee benefits
>
> CONS:
> New NC provider no clients currently
> No explanation of billing practices or pay schedule

(*Id.*)

18.     The Board of Commissioners voted unanimously to award the Robeson County Contract to Med1 Plus, with Med1 Plus to commence providing the non-emergency ambulance services to Robeson County residents on July 1, 2019. (June 17, 2019 Board of Commissioner's Minutes, ECF No. 53.11.) The minutes of June 17, 2019 meeting provide, in relevant part, as follows:

> (ADM/Approval for Franchise Agreement for Non-Emergency Convalescent Transport Services/Approved) Mr. Patrick Cummings stated that we are asking for approval for our franchise agreement for Non-Emergency Convalescent Transport which expires on June 30th. Mr. Cummings stated that we sent out RFP's and we received two proposals and one from our current provider of seven years Med 1 and we had an additional proposal from a new provider from Med 1 Plus and I have submitted the pros and cons on both providers and I am asking for your consideration on that agreement. Commissioner Oxendine made a motion, seconded by Commissioner Cummings to approve Med 1 Plus with a 1 year initial and 2 years thereafter as it is originally set up that way now. Those voting aye: 8 (Campbell, Cummings, Dial, Edge, Herndon, Oxendine, Stephens, Taylor).

(*Id.*)

19.     During the Board of Commissioners' meeting, the Commissioners expressed a desire for Med1 Plus to offer employment to all of Plaintiff's employees. (ECF No. 53.2, at p. 31.) Accordingly, Plaintiff's Director of Operations, Tiffany

Skimmiehorn ("Skimmiehorn"), invited Gruenemeier to meet with Plaintiff's employees regarding potential employment with Med1 Plus. (*Id.* at pp. 23–24.) Gruenemeier testified, without contradiction, that when the Robeson County Contract changes providers, hiring the prior providers employees "is kind of a given . . . [w]e always bring over the employees." (*Id.* at p. 27.) On June 18, 2019, Gruenemeier met with Plaintiff's employees and provided interested individuals with applications for employment with Med1 Plus. (*Id.* at pp. 26–28.)

20. At the June 18, 2019 meeting, Skimmiehorn gave Gruenemeier a "thick manila envelope." (ECF No. 53.2, at p. 28.)[3] Gruenemeier did not know the contents of the envelope and did not open it until a few days later. (*Id.* at pp. 28–29.) When Gruenemeier opened the envelope, she discovered that it contained Plaintiff's employee files including driver's licenses, social security cards, and health records. (*Id.* at p. 29.) Gruenemeier did not need the information and immediately resealed the envelope and subsequently returned it to Skimmiehorn. (*Id.* at pp. 29–30.)

21. White's last day working at Plaintiff's facility was Friday, June 21, 2019. (ECF No. 53.12, at pp. 20–21.) White was still employed with Plaintiff on Monday, June 24, 2019, but did not report to Plaintiff's facility. (*Id.* at pp. 21–22.) White began employment with Med1 Plus as a dispatcher sometime after June 24, 2019. (*Id.* at p. 22.) Plaintiff contends that when White left Plaintiff's employment, she took with her a blue notebook containing Plaintiff's log-in credentials (including passwords) for certain network accounts and websites. (ECF No. 61, at p. 10.) White

---

[3] Skimmiehorn denies that she provided the envelope to Gruenemeier. (ECF No. 56.3, at p. 65.)

admits that she took the notebook with her but claims that it also contained her personal passwords. (ECF No. 53.12, at pp. 24–25.) When Skimmiehorn texted her about the notebook, White replied "My notebook. Nobody else had their stuff in it. I can't use any of the passwords for anything for personal use or any other computer. There is nothing in it that I can use. I did nothing wrong." (ECF No. 53.12, at p. 26; Text messages, ECF No. 53.19.)

22. Plaintiff also has produced evidence that someone logged into Plaintiff's computer network on June 24, 2019 using White's credentials. Plaintiff contends that White herself logged in (ECF No. 61, at p. 11), but White denies that she was the one who logged in. (ECF No. 53.12, at pp. 31–32.)

23. After July 1, 2019, Plaintiff sought additional business in North Carolina. In January 2020, Plaintiff secured a contract with Brunswick County North Carolina to provide non-emergency ambulance services for that county. (ECF No. 53.13, at p. 16.)

*D. The lease between Plaintiff and Gruenemeier*

24. At all times while it was party to the Robeson County Contract, Plaintiff operated its business from a facility located at 2507 Elizabethtown Road in Lumberton. Plaintiff rented the facility from Gruenemeier and another individual, H. Jeffrey Stephens, under a lease executed on September 1, 2012. ("Lease Agreement," ECF No. 53.3.) Pursuant to the Lease Agreement, the initial lease term was for three years and two months. (*Id*. at p. 2.) The Lease Agreement also contained an "Evergreen Term," providing that after the initial lease term, Plaintiff

"shall occupy the premises for so long as they are in business in Robeson County, North Carolina from and after November 1, 2015." (*Id*.) The Lease Agreement also contained a "Default" provision that provided in relevant part as follows:

> (b) if TENANT fails to perform any other of the terms, conditions, or covenants contained in this lease to be observed or performed by TENANT and such failure of performance shall exist for ten (10) days, whether or not continuous or consecutive, and a written notice to cure same shall have been given TENANT pursuant to the further terms of this Lease or . . . then LANDLORD . . . shall have the immediate right of re-entry and may remove all persons and property from the PREMISES and such property may be removed and stored in a public warehouse of elsewhere at the cost of and for the account of TENANT,

> . . .

> In the event of a failure by TENANT to pay rent or failure to perform any other terms, conditions or covenants of this lease after a 10-day written notice to cure same shall have been given TENANT pursuant to the further terms of this Lease, then LANDLORD may terminate this lease and, notwithstanding a re-entry and reletting without termination, . . .

(*Id*. at pp. 6–7.)

25. On July 7, 2019, at 8:52 p.m., Gruenemeier sent Hicks an email stating as follows:

> Richard,

> You are in violation of your lease as of July 6, 2019[.]  I have attached the lease for your reference[.]

> Donna Gruenemeier

(ECF No. 53.2, at p. 56; July 7, 2019 Email, ECF No. 53.5.)  Gruenemeier testified that she believed Plaintiff was in violation of the Evergreen Term because "[w]hen

their contract ended, they were to be removed from the building. They were to leave the building. It was only while they had a contract." (ECF No. 53.2, at p. 51.) Gruenemeier padlocked the gates to the facility before 8:00 a.m. on July 8, 2019. (*Id.* at p. 56.) Gruenemeier was aware that Plaintiff still had property inside the facility. (*Id.* at p. 51.)

*E. The lawsuit and proceedings*

26. On July 15, 2019, Plaintiff initiated this lawsuit by filing the Complaint in the Superior Court of Robeson County making claims for: breach of contract; tortious interference with contract; tortious interference with a prospective economic advantage; unfair or deceptive trade practices in violation of the North Carolina Unfair or Deceptive Trade Practices Act ("UDTPA"); misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act ("TSPA"); common law trademark infringement; breach of fiduciary duty; civil conspiracy; and requesting a preliminary injunction. (Complaint, ECF No. 3.)

27. On July 24, 2019, this case was designated to the North Carolina Business Court and assigned to the undersigned. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

28. Defendants Common Capital, LLC, Morman, and White filed a Motion to Dismiss ("CMW Motion," ECF No. 11), and Med1 Plus, Bryant, and Gruenemeier filed a Motion to Dismiss. ("MBG Motion," ECF No. 14; collectively the CMW Motion and the MBG Motion are the "Motions to Dismiss".)

29.     On February 26, 2020, the Court filed an Order and Opinion on Defendants' Motions to Dismiss. *Med1 Services, LLC v. Med1 Plus, LLC*, 2020 NCBC LEXIS 24 (N.C. Super. Ct. Feb. 26, 2020) ("Dismissal Order"). In the Dismissal Order, the Court dismissed all of the claims alleged against Common Capital and Morman. The Court also disposed of the following claims: (i) tortious interference with contract; (ii) all of the claims alleged against White except for civil conspiracy; and (iii) common law trademark infringement against Gruenemeier. *Id*. at 40–41.

30.     On December 7, 2020, Defendants filed their Motion for Summary Judgment. (ECF No. 52.) Defendants move for summary judgment as to the remaining claims for: (i) breach of the Lease Agreement against Gruenemeier; (ii) tortious interference with prospective economic advantage against Med1 Plus, Bryant, and Gruenemeier; (iii) violation of the UDTPA against Med1 Plus, Bryant, and Gruenemeier; (iv) violation of the North Carolina Trade Secrets Protection Act ("NCTSPA") against Med1 Plus, Bryant, and Gruenemeier; and (v) civil conspiracy. (ECF No. 52.) Defendants do not seek summary judgment as to Plaintiff's claims for breach of the Confidentiality Agreement (ECF No. 5, at ¶¶ 36–41) or for common law trademark infringement against Bryant. (*Id*. at ¶¶ 91–98.)

## II.     STANDARD OF REVIEW

31.     "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic*

*Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting N.C.G.S. § 1A-1, N.C. R. Civ. P. 56(c)). The moving party bears the burden of presenting evidence which shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561 (2008). Where the moving party is the defendant, they may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would have been barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523. An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235 (1972). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000).

32. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, (2000). As recently reiterated by the North Carolina Court of Appeals, the burden on the non-movant goes beyond merely producing some evidence or a scintilla of evidence in support of its claims. Rather,

> If the movant meets this burden, the nonmovant must take affirmative steps to set forth specific facts showing the existence of a genuine issue of material fact. An adverse party may not rest upon the mere allegations or denials of his pleading. A genuine issue of material fact is one that can be maintained by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference.

*Khashman v. Khashman*, No. COA16-765, 2017 N.C. App. LEXIS 715, at *15 (N.C. Ct. App. Sept. 5, 2017) (citations and internal quotation marks and modifiers omitted).

## III.   ANALYSIS

33.   The Court will first address Defendants' Motion to Strike, followed by the Motion for Summary Judgment.

### A. *Motion to Strike*

34.   In the Motion to Strike, Defendants move to strike portions of the Affidavit of Richard Hicks.  ("Hicks' Affidavit," ECF No. 56.5.)   Specifically, Defendants move the Court to strike paragraphs 4, 9, 18-20, and 28 of Hicks's affidavit (ECF No. 57, at p. 2) arguing that Hicks had no personal knowledge of Bryant approaching any of Plaintiff's employees before the County awarded the Contract to Med1 Plus, and that Hicks presented contradictory testimony regarding the status of his operations and employees in Robeson County after the Contract was awarded to Med1 Plus.  (ECF No. 57.1, at p. 2.)

35.   "A motion to strike is addressed to the sound discretion of the trial court." *Kingsdown, Inc. v. Hinshaw*, 2016 NCBC LEXIS 15, at *8 (N.C. Super. Ct. Feb. 17, 2016) (citing *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25 (2003)).

36.   The Court has thoroughly considered the arguments of the parties and the Court does not find that Hicks' affidavit contains statements that are beyond his

personal knowledge or are contradictory with other statements in the record. Therefore, the Court CONCLUDES, in its discretion, that the Motion to Strike should be DENIED.

*B. Motion for Summary Judgment*

37.     Defendants move for summary judgment on Plaintiff's remaining claims for: (i) breach of the Lease Agreement against Gruenemeier; (ii) tortious interference with prospective economic advantage against Med1 Plus, Bryant, and Gruenemeier; (iii) violation of the UDTPA against Med1 Plus, Bryant, and Gruenemeier; (iv) violation of the NCTSPA against Med1 Plus, Bryant, and Gruenemeier; and (v) civil conspiracy.  The Court analyzes each claim in turn.

i.     <u>Breach of Lease Agreement against Gruenemeier</u>

38.     In its second cause of action, Plaintiff alleges a claim against Gruenemeier for breach of contract.  (ECF No. 3, at ¶¶ 49–55.)  Plaintiff alleges that Gruenemeier breached the Lease Agreement by sending the notice of breach on July 7, 2019 and locking Plaintiff out on July 8 without providing a required ten-day notice to cure.  (*Id.* at ¶¶ 52–53.)

39.     In North Carolina, a party asserting breach of contract must show "(1) existence of a valid contract; and (2) breach of the terms of that contract."  *Cater v. Barker*, 172 N.C. App. 441, 445 (2005) (citing *Poor v. Hill*, 138 N.C. App. 19, 26 (2000)).  "Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution."  *Lane v. Scarborough*, 284 N.C. 407, 409–10 (1973).  "When a contract is clear and

unambiguous, construction of the agreement is a matter of law for the court . . . and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Lynn v. Lynn*, 202 N.C. App. 423, 431 (2010) (citation omitted). The question of whether contractual language is ambiguous is for the court to determine. *Id.* at 432.

40. The Court concludes that language in the Lease Agreement unambiguously establishes the parties' intent that Gruenemeier would provide at least ten days' notice of any default to Plaintiff before taking any action, including entering the property or locking Plaintiff out. The evidence shows that Gruenemeier provided less than one day's notice to Plaintiff of an alleged default.

41. Defendants argue that Plaintiff violated the Evergreen Term of the Lease Agreement because it was not "conducting business" in Robeson County after the Robeson County Contract expired on June 30, 2019, and it did not immediately vacate the facility upon losing the contract. (ECF No. 62, at p. 18.) This argument is specious. At a minimum, Plaintiff has produced evidence that it continued to conduct business from the facility after June 30, 2019 by seeking out, and then securing, contracts to provide non-emergency ambulance services in other North Carolina counties. Such activities certainly could constitute being "in business in Robeson County." (ECF No. 53.3, at p. 2.) In addition, Defendants do not explain how the notice of default, sent to Plaintiff only seven days after it was no longer servicing the Robeson County Contract, and locking Plaintiff out of the facility the next day, comports in any way with the default and notice provisions of the Lease Agreement.

42.     Therefore, to the extent Defendants seek summary judgment in their favor on Plaintiff's claim for breach of the Lease Agreement, the Motion should be DENIED.

### ii. Tortious Interference with Prospective Economic Advantage against Med1 Plus, Bryant, and Gruenemeier

43.     Plaintiff alleges a claim for tortious interference with prospective economic advantage against Med1 Plus, Bryant, and Gruenemeier.  (ECF No. 3, at ¶¶ 67–75.)  Plaintiff alleges that "Bryant, Med1 Plus and Gruenemeier intentionally used confidential information acquired from Plaintiff . . . to secure the contract to provide non-emergency ambulance services from Robeson County," that they did so "pursuant to common scheme or plan to destroy Plaintiff's business," and their actions were "without justification" and "malicious."  (*Id.* at ¶¶ 69, 73, and 74.)

44.     "An action for tortious interference with prospective economic advantage is based on conduct by the defendants which prevents the plaintiffs from entering into a contract with a third party." *Walker v. Sloan,* 137 N.C. App. 387, 392–93 (2000) (citing *Owens v. Pepsi Cola Bottling Co.*, 330 N.C. 666, 680 (1992)).  "However, a plaintiff's mere expectation of a continuing business relationship is insufficient to establish such a claim.  Instead, a plaintiff must produce evidence that a contract would have resulted but for a defendant's malicious intervention." *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693, 701 (2016) (citation omitted).  A plaintiff must show that the defendant "interfere[d] with a business relationship 'by maliciously inducing a person not to enter into a contract with [the plaintiff], which he would have entered into but for the

interference, . . . if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights.'" *Id.* (quoting *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559 (1965)). Defendants must not be acting in the legitimate exercise of their own right, "but with a design to injure the plaintiff or gain some advantage at his expense." *Owens*, 330 N.C. at 680.

45. Defendants first argue that Med1 Plus, Bryant, and Gruenemeier are entitled to summary judgment because Plaintiff has failed to present evidence that Bryant or Gruenemeier used Plaintiff's confidential information in preparing their proposal for the Robeson County Contract. (ECF No. 62, at p. 16.) Defendants contend that "Plaintiff only speculates that Bryant used Plaintiff's information." (*Id.*)

46. Defendants also seem to argue that Plaintiff has not provided evidence that Med1 Plus, Bryant, and Gruenemeier acted with malice, and without justification, in submitting a competing proposal for the Robeson County Contract. They contend that Hicks and Gruenemeier formed Med1 Plus and submitted a proposal for the Robeson County Contract because Bryant was not able to purchase Plaintiff. (*Id.* at pp. 15–17.) Defendants apparently attempt to support this argument by noting that "Robeson County's Board made the ultimate decision" to award the Robeson County Contract to Med1 Plus and it "is clear that the decision by Robeson County to award the 2019 Contract was done publicly and after consideration." (*Id.* at pp. 16–17.)

47. Plaintiff responds to Defendants' arguments by claiming that "[i]t is clear that, but for Defendants' interference, Plaintiff would have maintained its

contract." (ECF No. 61, at p. 19.) In support of this claim, Plaintiff contends that Bryant's admission that he "retained the services of [ ] Gruenemeier in early 2019 to assist with developing and submitting a proposal to Robeson County . . . for Med1 Plus" demonstrates that Bryant and Gruenemeier were engaged in some sort of unlawful "scheme" to steal the Robeson County Contract. (*Id*.) However, it is undisputed that Plaintiff and Bryant did not have an agreement prohibiting Bryant from competing with Plaintiff. In addition, it is undisputed that Bryant first retained Gruenemeier to assist him with evaluating Plaintiff's business during the purchase negotiations, and not for the purpose of forming Med1 Plus.

48. Plaintiff argues that "[t]he record also shows that the Defendants had to rely upon [Plaintiff's confidential] information to acquire the contract and to obtain the financing necessary to form Med1 Plus." (*Id*.) However, Plaintiff has not presented evidence that Bryant or Gruenemeier used Plaintiff's confidential information in formulating the Med1 Plus Proposal or to obtain financing for Med1 Plus. In fact, the Court notes that Plaintiff has not pointed to any information contained in the Med1 Plus Proposal that would support an inference that it used Plaintiff's confidential information. For example, the Med1 Plus Proposal does not contain information regarding the compensation Med1 Plus intends to offer its employees, the rates that it expects to pay for insurance or to maintain its vehicles, or any other financial information of any kind that could be linked to data provided by Plaintiff to Bryant. Nor does Plaintiff present any evidence regarding how or from whom Bryant obtained financing or the amount of such financing, let alone evidence

showing that Bryant used Plaintiff's confidential information to secure the financing. In addition, the undisputed evidence also establishes that Bryant and Gruenemeier had lengthy experience in the non-emergency ambulance service business and likely were capable of preparing Med1 Plus's Proposal without using Plaintiff's information.

49. Finally, Plaintiff does not specifically address the issues of lack of justification or malice necessary to sustain a claim for tortious interference with prospective advantage. The malice required to overcome a justification of business competition is legal malice, and not actual malice. *Childress v. Abeles*, 240 N.C. 667, 675 (1954) ("It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term 'malice' is used in this connection in its legal sense and denotes the intentional doing of the harmful act without legal justification."). Interference is "justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors." *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487 (1992). A defendant's actions are not justified "[i]f the defendant's *only* motive is a malicious wish to injure the plaintiff." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988) (emphasis added). If an individual has a sufficient lawful reason for interfering in a prospective business relationship, such as in the interest of competition, he or she is exempt from liability, regardless of his or her actual malice. *Robinson, Bradshaw, & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 318

(1998). "Even if plaintiff shows that defendant acted with ill intentions, legal malice does not exist unless plaintiff can show that defendant had no legitimate business justification for the interference." *Griffin v. Holden*, 180 N.C. App. 129, 140 (2006); *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *38 (N.C. Super. Ct. June 20, 2016).

50. The Court concludes that Plaintiff has not raised an issue of disputed fact as to whether Med1 Plus, Bryant, and Gruenemeier used Plaintiff's confidential information to unlawfully interfere with Plaintiff's opportunity to win the Robeson County Contract or that Med1 Plus, Bryant, and Gruenemeier acted without justification and with malice in making Med1. Therefore, to the extent Defendants seek summary judgment in their favor on Plaintiff's claim for tortious interference with prospective economic advantage, the Motion should be GRANTED.

### iii. Misappropriation of Trade Secrets against Med1 Plus, Bryant, and Gruenemeier

51. Plaintiff alleges that the financial and other information it provided to Bryant in connection with the negotiations for Bryant's purchase of Plaintiff constituted trade secrets, and that Bryant and Gruenemeier (and consequently Med1 Plus) violated the NCTSPA by using the information to prepare Med1 Plus's Proposal for the Robeson County Contract. (ECF No. 3, at ¶¶ 82–89.) Plaintiff alleges that the trade secret information it provided to Bryant included "client and employee records, detailed information regarding what each employee's roles and responsibilities were, the non-emergency ambulance services [Plaintiff] provided to Robeson County, [Plaintiff]'s financial records, profit and loss statements, detailed

malpractice and automobile insurance information, call volumes, clients' [Non-Emergency Ambulance Services] transport records, . . . vehicle records, and training policies and procedures." (*Id*. at ¶ 85.)

52. The elements of and burdens of proof regarding a claim for misappropriation of trade secrets under the North Carolina statute are well established. *See Bldg. Ctr., Inc. v. Carter Lumber of the North, Inc.*, 2017 NCBC LEXIS 85, at \*17–25 (N.C. Super. Ct. Sept. 21, 2017).

53. Defendants' argument in support of summary judgment on the NCTSPA claim is as follows:

> [T]he record shows that Defendants either already possessed this information or could have easily compiled it from public records. Moreover, Plaintiff provided this identical information to Robeson County. Plaintiff's information was not subject to reasonable efforts to maintain its secrecy. The facts also show that Defendants could have compiled a similar database through public listings from the information obtained from the (*sic*) Robeson County and patients as Robeson County managed the Contract, such as the patient calls and appointments. Moreover, the Contract was exclusive to Robeson County and only one provider could operate under the Contract. Thus, the Contract obligated Plaintiff to turn over the operations Non-Emergency Ambulance Services to Med1 Plus effective July 1, 2020.

(ECF No. 62, at p. 22; case citations omitted.) Defendants do not cite any evidence in the record in support of these claims, and the Court is not able to locate any such evidence. In fact, some of these claims are demonstrably incorrect. For example, Plaintiff's proposal to Robeson County did not contain Plaintiff's "profit and loss statements, detailed malpractice and automobile insurance information, call

volumes" or "vehicle records" other than identifying Plaintiff's vehicles by make and Vehicle Identification Number. (ECF No. 56.13.) There is no other evidence in the record that Plaintiff provided this specific information to Robeson County.

54. In addition, to the extent that Defendants contend that Hicks did not tell Bryant that any of Plaintiff's information was confidential and that Bryant did not sign the Confidentiality Agreement, there are disputed facts as to the adequacy of Plaintiff's measure to protect the secrecy of its information. These disputed facts preclude granting summary judgment.

55. Finally, the Court notes that while Plaintiff has failed to produce evidence that Bryant used its confidential information in preparing its proposal for the Robeson County Contract, it is undisputed that he disclosed the information to Gruenemeier. (ECF No. 53.14, at pp. 26–27.) Such disclosure could support a claim for violation of the NCTSPA.

56. Therefore, to the extent Defendants seek summary judgment in their favor on Plaintiff's claim for misappropriation of trade secrets in violation of the NCTSPA, the Motion should be DENIED.

### iv. Unfair and Deceptive Trade Practices against Med1 Plus, Bryant, and Gruenemeier

57. Plaintiff alleges that Med1 Plus, Bryant, and Gruenemeier engaged in unfair or deceptive trade practices in violation of the UDTPA. (ECF No. 5, at ¶¶ 77–81.) Plaintiff alleges, *inter alia*, that the "use of Plaintiff's confidential information . . . in order to destroy Plaintiff's business and successfully acquire the" Robeson County Contract violates the UDTPA. (*Id.* at ¶¶ 78–79.)

58. "To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 303 (2004). Whether an act or practice is unfair or deceptive is ultimately a question of law for the Court. *Songwooyarn Trading Co. v. Sox Eleven, Inc.*, 213 N.C. App. 49, 56 (2011).

59. Misappropriation of trade secrets may form the basis of a UDTPA claim if it satisfies the required elements for an unfair trade practices claim. *Drouillard v. Keister Williams Newspaper Services, Inc.*, 108 N.C. App. 169, 172 (1992) ("If the violation of the Trade Secrets Protection Act satisfies this three prong test, it would be a violation of [G.S.] § 75-1.1."). The Court has already concluded that issues of fact remain for resolution by a jury regarding Plaintiff's claim for misappropriation of trade secrets, and that claim could support Plaintiff's claim under the UDTPA. *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659 (2009) (A violation of the NCTSPA "constitutes an unfair act or practice under [N.C.G.S.] § 75-1.1."). Since Plaintiff's claim for misappropriation of trade secrets survives, to the extent Defendants seek summary judgment in their favor on Plaintiff's claim for violation of the UDTPA, the Motion should be DENIED.

*v. Civil Conspiracy*

60. Plaintiff alleges a claim for civil conspiracy against Defendants. (ECF No. 5, at ¶¶106–09.) Civil conspiracy is not an independent cause of action in North Carolina; rather, liability for civil conspiracy must be alleged in conjunction with an

underlying claim for unlawful conduct. *Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002). To state a claim for civil conspiracy, a plaintiff must show: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350 (2011). "[S]ufficient evidence of the agreement must exist to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Boyd v. Drum*, 129 N.C. App. 586, 592 (1998) (internal quotations omitted).

61. In the Complaint, Plaintiff makes boilerplate recitations of the key elements for a claim of civil conspiracy. Plaintiff alleges that "there existed between all the Defendants, a common plan or scheme to perform certain unlawful acts," that "as a result of agreement and conduct of Defendants, Plaintiff sustained an injury." (ECF No. 5, at ¶ 107.)

62. Defendants argue that the claim should be dismissed because "a corporation cannot conspire with itself." (ECF No. 61, at p. 11; citing e.g., *Seguro-Suarez v. Key Risk Ins. Co.*, 261 N.C. App. 200, 218 (2018) ("[A]n allegation that a corporation is conspiring with its agents, officers or employees is tantamount to accusing a corporation of conspiring with itself[,] and is therefore insufficient to establish a claim for civil conspiracy."). Defendants contend that

> Plaintiff merely asserts that Defendants' alleged unlawful actions were substantively pursuant to the direction of, employment by, or for the benefit of Med1 Plus. Plaintiff repeatedly alleges that Defendants were agents and

employees of Med1 Plus. To the extent that Defendants were employed by Med1 Plus, they could not have conspired, as they were all one, i.e., Med1 Plus.

(*Id.* at p. 12; record citations omitted.)

63. Defendants also argue that Plaintiff has not produced evidence that Defendants had an agreement to commit an unlawful act or that Bryant and Gruenemeier had lawful reasons for working together to secure the Robeson County Contract. (*Id.* at p. 13.)

64. Plaintiff argues that the Defendants are not protected by intra-corporate immunity because the evidence shows that "White and Gruenemeier conspired with Bryant and Med1 Plus prior to becoming employees of Med1 Plus." (ECF No. 61, at p. 22.) Plaintiff does not respond to Defendants' argument that Plaintiff has failed to produce evidence of an agreement.

65. This case is typical of many before this Court in which the plaintiff alleges a civil conspiracy between various defendants as a barely considered afterthought to its primary claims. Here—again, as is typical with most conspiracy claims—Plaintiff has done nothing more than link a number of unrelated actions by claiming that they were done in furtherance of a nefarious scheme to injure Plaintiff, but has developed no proof that there was any type of agreement between the Defendants to carry out an unlawful act. To the contrary, the evidence shows that Bryant lawfully retained Gruenemeier to advise him during the negotiations to purchase Plaintiff, and then to assist him with forming Med1 Plus and submitting the Med1 Plus Proposal after the negotiations proved unsuccessful. Similarly, the

evidence fails to show that White entered into an agreement with Med1 Plus, Bryant, or Gruenemeier to do anything illegal, but instead that White became employed with Med1 Plus only after it won the Robeson County Contract. The facts support the conclusion that Bryant's, Gruenemeier's, and White's actions were not part of a common scheme.

66. Plaintiff has not put forth evidence in this case that Defendants entered into any agreement with each other to misappropriate trade secrets or commit any other unlawful act. At most, Plaintiff's evidence shows that Defendants might have had access to Plaintiff's trade secrets and might have used this information in preparing Med1 Plus's bid. This is not, however, evidence that the individual Defendants made an agreement to misappropriate Plaintiff's trade secret or engage in any other unlawful conduct. Therefore, to the extent Defendants seek summary judgment on Plaintiff's claim for civil conspiracy, the Motion for Summary Judgment should be GRANTED.

## IV. CONCLUSION

THEREFORE, IT IS ORDERED that the Motion to Strike is DENIED, and that the Motion for Summary Judgment is GRANTED, in part, and DENIED, in part, as follows:

a. to the extent Defendants seek summary judgment on Plaintiff's claims for interference with prospective economic advantage and civil conspiracy, the Motion is GRANTED;

b. to the extent Defendants seeks summary judgment on Plaintiff's claims for breach of the Lease Agreement, misappropriation of trade secrets in violation of the NCTSPA, and violation of the UDTPA, the Motion is DENIED.

SO ORDERED, this the 24th day of June, 2021.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases